## PAUL J. GIFFORD v. ORRIN S. CARVILL.

REPRESENTATIONS AS TO VALUE OF MINING STOCK.—The value and richness of a mine belonging to a corporation, and its convenience to wood and water, are not mere matters of opinion or information, as to which the purchaser of stock from a stockholder has no right to rely upon the representations of the seller.

EVIDENCE OF FRAUD IN SALE OF MINING STOCK.—Fraudulent representations as to the value of the mine of a corporation, made by the seller of the stock of the company to the purchaser, as an inducement for the purchaser to buy, may be given in evidence, under a proper state of the pleadings, to defeat the collection of a promissory note given for the stock.

FRAUDULENT REPRESENTATIONS OF SELLER OF A CHATTEL.—A party cannot resist the payment of a promissory note, given in payment for property, on the ground of fraudulent representations, unless within a reasonable time after the discovery of the fraud he offers to return the property and rescind the contract, provided the property sold is of any value to either party.

CHATTEL OF NO VALUE NOT SUBJECT OF CONTRACT.—If a chattel be of no value to any one, it cannot be the basis of a contract, but if it be of any value to either party, it may be a good consideration for a promise.

FRAUDULENT REPRESENTATIONS IN SALE OF MINING STOCK.—Where the purchaser is induced by the fraudulent representations of the seller to make a purchase of mining stock, he may, within a reasonable time, by restoring the seller to the situation he was in before the sale, rescind the contract, and resist the payment of the note given for the property.

VALUE OF MINING STOCK.—A finding of fact that a mine owned by a corporation is valueless does not necessarily show that the stock of the corporation is valueless.

PRESUMPTION AS TO FINDINGS OF COURT.—Where there is no issue tendered in the pleadings upon a material matter, the Court or jury will not be presumed to have found on such matter.

DEFENSE THAT A NOTE WAS OBTAINED BY FRAUDULENT REPRESENTATIONS.—If a defendant would resist the payment of a promissory note, given for mining stock, on the ground that the seller made fraudulent representations as to the

value of the mine, the answer should set up the defense, and aver either that the stock was valueless to either party, or that the defendant had offered to return it and rescind the contract.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The notes in suit were given in part payment for twenty-five shares of the stock of the Amargoza Mining Company, situated in the southern part of California. The defendant had never visited the mine, and the purchase was made in San Francisco.

On the trial, the defendant introduced evidence tending to prove that the plaintiff, as an inducement for the defendant to purchase, told him he had just come from the mine, and that there were five hundred tons of ore out of the mine, which assayed as high as nine hundred dollars per ton, and that there was plenty of wood, lumber, and water near the mine to run a steam mill. The defendant also introduced evidence tending to prove that there was at the time only about twenty-five tons of ore out of the mine, which assayed only five dollars per ton, and that the mine was in a desert, with no wood or water near it, and was valueless, and had since been abandoned.

The defendant recovered judgment, and the plaintiff moved for a new trial, and assigned as one of his grounds that the evidence was insufficient to justify the verdict in this, that the matters sought to be proved were matters of opinion as to which the defendant had no right to rely on the statements of the plaintiff.

The Court denied a new trial, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Brooks & Whitney*, for Appellant, argued that the matters which the defendant sought to prove were : first—matters of opinion ; or, second—of information, as to which the defendant had no right to rely upon the statements of the plaintiff, and cited Chitty on Contracts, 397, 398. They also insisted that the matter of the answer, if true in point of fact, constituted

no defense, because the defendant did not in fact rescind the contract, and cited *Conner* v. *Henderson*, 15 Mass. 319 ; *Kimball* v. *Cunningham*, 4 Id. 502 ; *Perley* v. *Balch*, 23 Pick. 283 ; *Hyatt* v. *Boyle*, 5 Gill & Johns. 121 ; *Taymen* v. *Mitchell*, 1 Maryland Ch. Decis. 496 ; *Marston* v. *Knight*, 29 Maine, 341 ; 2 Kent, 480, and notes ; *Kane* v. *Johns*, 10 Watts, 109 ; *Voorhies* v. *Earl*, 2 Hill, 288 ; *Lightburn* v. *Cooper*, 1 Dana, 273 ; *Cany* v. *Graman*, 4 Hill, 626 ; *Thornton* v. *Wynn*, 12 Wheaton, 193 ; *Allen* v. *Anderson*, 3 Humph. 581 ; *West* v. *Cutting*, 19 Vermont, 536 ; *Grimaldi* v. *White*, 4 Esp. 95 ; *Barton* v. *Butters*, 7 East. 479 ; *Growning* v. *Mendham*, 1 Stark. 257 ; *Hopkins* v. *Appeltry*, 1 Id. 477 ; *Miller* v. *Tucker*, 1 C. & P. 15 ; *Percival* v. *Blake*, 2 Id. 514 ; *Cash* v. *Giles*, 3 Id. 407 ; *Fisher* v. *Samuda*, 1 Camp. 190 ; *Bowman* v. *Johnson*, 12 Wendall, 566 ; *Lander* v. *Taylor*, 5 Johns. 296.

*Sharp & Lloyd*, and *T. I. Bergen*, for Respondent, contended that under the facts of this case the purchaser had a right to rely on the representations of the seller, and if those representations were false it was a fraud, and a good defense; that it was not a case where the seller merely represented what he himself believed as to the value of the articles, and left the determination to the judgment of the buyer, and cited 2 Kent, 486 ; *Dogget* v. *Emerson*, 3 Story, 733 ; *Daniel* v. *Mitchell*, 1 Id. 172 ; *Small* v. *Atwood*, 1 Young, 407, 459 ; *Snow* v. *Denny*, 4 Metc. 161 ; *Buford* v. *Caldwell*, 3 Missouri, 477 ; *Thomas* v. *McCann*, 4 B. Monroe, 601 ; *Parham* v. *Randolph*, 4 How., Miss., 435 ; *Daniel* v. *Mitchell*, 1 Story C. C. R. 190 ; *Mason* v. *Crosby*, 1 Wood. & M. 852, *et seq.; Farren* v. *Daniels*, Id. 100 ; *Foster* v. *Swasey*, 2 Id. 222 ; *Smith* v. *Babcock*, Id. 254 ; *Tuthill* v. *Babcock*, Id. 299 ; *Shaeffer* v. *Slade*, 7 Blackf. 178 ; *Rench* v. *Sheldon*, 14 Barb. 66 ; *Hill* v. *Gray*, 1 Starkie, 434 ; and *Smith* v. *Richards*, 11 Pet. 71. They also contended that the Court might allow the defendant to return the stock even after the trial, and cited *Willis* v. *Bradley*, 1 Sandf. 560 ; *Ladd* v. *Moore*, 3 Id. 689 ; *Nichols* v. *Michael*, 23 N. S. 264 ; *Fraschieres* v. *Henriques*, 23 Barb. 270 ; *Pequeno* v. *Taylor*, 38 Id. 388 ; *Thurston* v. *Blanchard*, 1 Metc. 557.

By the Court, SAWYER, J.

This is an action upon two promissory notes given for a part of the purchase money for shares of stock in a mining company. The defense is, that the defendant was induced to purchase by the false and fraudulent representation of the plaintiff as to the value of the mines owned by the company issuing the stock. There is no averment in the answer, and no proof or finding of the Court, that defendant notified the plaintiff of his intention to rescind the contract on the ground of the fraud, or that he offered to return the stock. On the contrary, it appears that this defect was made one of the grounds for a new trial, and the Court required the defendant to deposit the stock with the Clerk for the benefit of the plaintiff as a condition of denying the motion.

We do not think the matters which the defendant sought to prove, as they are presented by the record, were mere matters of opinion or information, as to which the defendant had no right to rely upon the statements of the plaintiff. (*Smith* v. *Richards*, 13 Peters, 26 ; *Bennett* v. *Judson*, 21 N. Y. 239.)

*Fraudulent sale of mining stock, and rescission of contract.*

Appellant insists that, although the matters alleged and claimed to have been proved, might, if true, have justified the defendant in rescinding the contract and returning the stock, yet, until such rescinding and return, they constituted no defense to an action on the note ; and such is the general rule upon the subject. In *Herrin* v. *Libbey*, 36 Maine, 357, the rule is expressed in the following language, viz : " The rights of a party who has been defrauded in making a contract are, on the discovery of the fraud, *within a reasonable time*, to rescind the contract and restore the parties to their former condition, or to affirm the contract and claim compensation or damages for the injury he has sustained by reason of the fraud." In *Burton* v. *Stewart*, 3 Wend. 239, the Court say : " Had they intended to treat the contract as void, on the ground of fraud, it was their duty, when they discovered that

the mare was not such as the plaintiff had represented her to be, to have returned her to the plaintiff. When prosecuted on the note, and the cause brought to trial, it was too late to repudiate the contract." (See, also, *Kimball* v. *Cunningham*, 4 Mass. 502; *Norton* v. *Young*, 3 Greenl. 32; *Campbell* v. *Fleming*, 1 Adolp. and Ellis, 40.) These authorities state the rule correctly in all cases where the property purchased is of the slightest value to anybody. When the article is absolutely valueless for any purpose, it is not necessary to return it. This is on the ground, that an article absolutely without any value is not the subject of a contract—that it cannot afford any consideration for a promise, and the contract is *nudum pactum*—absolutely void, *ab initio*, for want of a consideration to support it. But it is not enough that it shall be without value to the defendant. If it *is*, or *may be* of *any* value to *either* party, or if the detention would produce any loss or injury to the other party, the contract must be rescinded, and the property returned within a reasonable time after the discovery of the fraud. The editor of the last edition of Greenleaf's Reports, in a note to *Norton* v. *Young*, 3 Greenl. 33, thus states the rule and cites a number of authorities to sustain it. In *Conner* v. *Henderson*, 15 Mass. 321, the property sold consisted of a number of casks of lime—the lime proving to be worthless. The Court say (p. 322) : " Although the principal subject of the contract, in the present case, may be presumed, from the evidence reported, to have been absolutely of no value, and so the returning of it would have been but an idle act, yet the casks were of some value and should have been restored, if the plaintiff would treat the sale as a nullity, and demand his money as paid without consideration.". So also in *Perley* v. *Balch*, 23 Pick. 285, the Court say : " Where the purchaser is induced, by the fraudulent misrepresentations of the seller, to make the purchase, he may, within a reasonable time, by restoring the seller to the situation he was in before the sale, rescind the contract and recover back the consideration paid, or, if he has given a note, resist the payment

of it.   Here was no return of the property purchased; but if
that property was of no value, whether there was any fraud
or not, the note would be *nudum pactum.*   The defendant's
counsel, not controverting the general rule, objects to the
qualification of it.   He says that the ox, though valueless to
the defendant, might be of value to the plaintiff, and so the
defendant would be bound by his contract, although he
acquired nothing by it.   But a damage to the promisee is as
good a consideration as a benefit to the promisor.   If a chattel
be of no value to any one, it cannot be the basis of a bargain;
but if it be of any value to either party, it may be a good con-
sideration for a promise.   If it is beneficial to the purchaser,
he certainly ought to pay for it.   If it be a loss to the seller,
he is entitled to remuneration for his loss.   But it is apparent
that a want of consideration was not the principal ground of
defense.   The defendant mainly relied upon fraud or a war-
ranty.   And to render either available to avoid the note it was
indispensable that the property should be returned.   He can-
not rescind the contract and yet retain any portion of the con-
sideration.   The only exception is where the property is
entirely worthless to both parties.   In such case the return
would be a useless ceremony, which the law never requires.
The purchaser cannot derive any benefit from the purchase
and yet rescind the contract.   It must be nullified *in toto,* or
not at all.   It cannot be enforced in part and rescinded in
part.   And if the property would be of any benefit to the
seller, he is equally bound to return it.   He who would
rescind a contract must put the other party in as good a situ-
ation as he was before, otherwise he cannot do it.   Chitty on
Con. 276; *Hunt* v. *Silk,* 5 East. 449; *Conner* v. *Henderson,* 5
Mass. 314."   (See also *Shepherd* v. *Temple,* 3 N. H. 457; *Carter*
v. *Walker,* 2 Rich. 40; *Christy* v. *Cummins,* 3 McLean, 386;
Chitty on Con., pages 402, 636, 665, and notes.)   Thus it will
be seen that the safe course to pursue for a party who has
been induced by fraudulent representations to make a pur-
chase which he otherwise would not have done, is, when the

fraud is discovered, to at once repudiate the contract and return the things purchased.

*Return of property after trial is not in time to obtain rescission of contract.*

If it was necessary to rescind the contract and return the property in this case, a surrender of the stock to be delivered to the plaintiff made after verdict and judgment, upon requirement of the Court as a condition of denying a new trial, was not in time. The cases cited by respondent on this point are of a different class and not applicable, or, strictly speaking, are not within the rule. They are cases where a party, upon fraudulent representation as to his pecuniary condition, has induced other parties to sell him goods on credit, giving his own note therefor. The vendor in such cases, upon discovering the fraud, may bring trover or replevin without first surrendering the note. But he must be prepared to surrender it on the trial. Of course, in that class of cases no loss can result to the defendant from retaining his own note till the trial. But where the vendee gives the note of a third party upon a fraudulent representation as to the responsibility of the maker, the vendor must return the note to the vendee before suing, for the delay may result in injury to the vendee. This distinction is stated and authorities referred to in the note before cited. (3 Greenl. 33, note.)

To apply these principles to the present case. There is no averment in the answer, and no evidence, that defendant rescinded the contract and returned, or made a tender of the stock, and no averment that it was of no value, unless the averment that it was " of little or no value " can be so construed. If it was not absolutely without value to either party—if it had a little value—there was a consideration which, being actually retained, did not afterward fail, and it was necessary to rescind the contract and return the consideration within a reasonable time after the discovery of the fraud. We are inclined to think the allegation cannot be regarded as an averment that there was no value. It must be

construed most strongly against the pleader, and the implication is that it might have been of some, though little, value. At all events, the answer does not squarely negative the idea that the stock was of some value.

It is true that the Court, upon the evidence, (which, however, was admitted under objection that it was inadmissible under the pleadings,) found that the *mine* of the company " was of no value whatever," but there is no finding as to whether the " *shares of mining stock* in the Amargoza Mining Company," which formed the consideration of the note, were valueless or otherwise. The value of the mine referred to may have been the main inducement to purchase, and the defendant may have been entitled to rescind the contract in consequence of fraudulent representations in regard to its value, yet it by no means follows that the stock of the company owning the mine was utterly valueless because *that particular mine* was so. And the burden of alleging and showing that the stock was valueless rested on the defendant. The company may, for aught that appears to the contrary, have had other property, or a paid up capital sufficient to have still made the stock of some value. As there was no averment that the stock had no value, there was strictly no issue tendered on that point, and although there is no exception for want of a finding, the Court cannot be presumed to have found on such issue. The cause appears to us to have been somewhat loosely tried on both sides, and not with a clear view of the distinction made by the authorities before cited between those cases that require a rescission of the contract and return of the articles purchased, and those which do not. But on the motion for a new trial the necessity of rescinding the contract and returning the stock was distinctly urged, and the Court was evidently strongly impressed with the soundness of this view. The learned Judge, in deciding the motion, observes : " The plaintiff, with considerable force, says that the defendant should not avoid payment of the notes and retain the stock. Although the stock is valueless *to the defendant,* and never had any value, yet the plaintiff has a right to the pos-

session of it, and a new trial will be granted unless the defendant deliver to the Clerk of this Court, for the plaintiff, said stock or equivalent shares of said stock within five days, whereupon the motion for a new trial will be denied." A fact which does not distinctly appear in the finding, or to be within the issues tried, is here assumed, viz : that " the stock is valueless to the defendant, and never had any value." But the Court, nevertheless, seems to be of the opinion that it might be of value to the plaintiff, and that it must still, even after verdict and judgment, be returned, or a new trial had. We have seen, if it was absolutely of no value at all, there was no necessity for returning it; but if it was of some value, and on that ground it was necessary for the defendant to return it, then it was too late, after verdict and judgment, to offer it for the first time, on the requirement of the Court as a condition of denying a new trial. We think upon the whole, that a new trial should be had in order that the questions upon which the rights of the parties depend may be directly put in issue, tried and determined in view of the law as herein indicated.

Judgment and order denying a new trial reversed, and a new trial granted, with leave to the parties to amend their pleadings as they may be advised.