[L. A. No. 2336. In Bank.—December 2, 1910.]

## EPES RANDOLPH, Respondent, v. LYCURGUS LINDSAY, Appellant.

CONTRACT—AGREEMENT TO EQUALIZE ADVANCES—ABROGATION OF CONTRACT—EVIDENCE.—In an action to recover a balance claimed to be due for money paid by plaintiff for the defendant in the development of certain mining property, in pursuance of a contract whereby the parties agreed to equalize as between themselves the advances made by either for such purpose, it is held, upon a review of the evidence, that the defendant had abrogated the contract on a specified date, as he had a right to do, and that the plaintiff was not entitled to recover for advances subsequently made, in the absence of evidence showing such advances to have been made on account of obligations incurred or uncompleted transactions undertaken prior to the defendant's abrogation of the contract.

APPEALS from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. George H. Hutton, Judge.

The facts are stated in the opinion of the court.

Harris & Swanwick, and Hunsaker & Britt, for Appellant.

Eugene S. Ives, and Gibson, Trask, Dunn & Crutcher, for Respondent.

SHAW, J.—Appeals by defendant from the judgment and from an order denying his motion for a new trial.

The plaintiff sued to recover $26,784.62 alleged to be due for money paid by plaintiff for the defendant under two special contracts. It is contended by the appellant that the findings as to the amount due plaintiff are not sustained by the evidence.

Randolph Lindsay, and one Mackay acquired certain gold mines in Mexico, which they conveyed to a corporation organized by them named the Llanos de Oro Mining and Milling Company, with a capital stock of four million dollars, divided into four hundred thousand shares of the par value of

ten- dollars each. In consideration of the conveyance of the mines the three parties received the entire capital stock of the company in equal shares. In order to get the gold from the mines, it was necessary to expend a large amount of money in the erection of a stamp mill and in development work. Randolph and Lindsay, as managers of the company, undertook to raise the required funds by means of notes of the company. It was agreed between the three that in placing these loans each payee was to receive, as a bonus, four dollars in stock for each dollar loaned, the stock required for that purpose being contributed in equal amounts by the three interested parties. Mackay, however, was not expected to, and did not, procure any loans or otherwise aid in financing the concern. The sum of $446,300 was raised in this manner and expended on the mines prior to April 21, 1906. The stamp mill was not finished and it was necessary to raise more money to carry the enterprise to completion and fruition. Randolph had already advanced for the company sums amounting to $20,250. The complaint alleges, and the court finds, that on or about April 21, 1906, the plaintiff and defendant agreed with each other that the corporation should continue to carry on its business and plans of development and equipment, and that to enable it to do so they would advance for it the necessary funds, share and share alike, and would pay, share and share alike, any and all debts of the company incurred by reason of carrying on its business and plans aforesaid, and that each would pay to the other whatever sum of money was necessary to equalize their respective advances. It is claimed by the appellant that this does not cover the amounts previously advanced by Randolph, as aforesaid, which amounts were included in the judgment. As we have concluded that the judgment and order must be reversed for other reasons to be presently stated, we need not consider this point. We state the facts aforesaid because they tend to explain the subsequent transactions.

In July or August, 1906, the mill was completed and upon a thorough milling test of the ore it turned out to be too poor to be worth working. In other words, the enterprise proved to be a failure. The mines were shut down. It is alleged, and the court, in effect, finds that to meet this emer-

gency and retrieve the disaster as far as might be, the plaintiff and defendant, in October, 1906, agreed with each other that the company should explore and seek for mines or mining territory in the vicinity of the mill which could be treated profitably by the mill, or which could be purchased, leased, or used in connection therewith, and that they would advance to the company, from time to time, such money as might be required therefor, share and share alike, would pay, equally, all debts of the company incurred in so doing, and that either would pay to the other whatever sums were necessary to equalize between them the advances so made for the company.

The findings as to the amounts advanced by Randolph included the sum of $23,294.82, composed of numerous items of advances made by Randolph from December 24, 1906, to July 16, 1907. It is contended by the appellant that the agreement of October, 1906, was abrogated by him on December 6, 1906, and that he is therefore not bound to equalize the advances of Randolph made after the said date. This claim appears to be well founded. On December 4, 1906, Randolph sent a letter to Lindsay containing a statement showing that he, Randolph, had advanced for the company to that date, under both agreements, a total sum of $69,812.87 and that Lindsay had advanced only $31,230, Randolph's excess being $38,- 582.87, and asking Lindsay to advance immediately as much to equalize them as he could spare, or to make a twelve months' note for the difference so that the money could be raised on it for the company's use. He also said he was taking steps to procure the Cerro Dolorado mine for the Llanos company. On December 6, 1906, Lindsay answered by letter, saying "I am not paying Llanos debts without some security and a plain, fair understanding with the stockholders. . . . I am surprised that you should assume to advance money on my account and without my consent. I am able to do my own advancing. . . . Referring to the Sierra Colorado mine, would say, after your letter to-day, I do not care to go any further with the deal, or any other deal, without some thorough understanding." This was a repudiation of the agreement which Randolph claimed to exist and upon the faith of which he had been acting. It implied a denial of the making of such agreement, and it was, in effect, a refusal to be bound by it in the future. In his testimony Randolph refers to the

letter of December 6th as a letter "repudiating all our arrangements." Randolph replied by letter on December 14, 1906, to the effect that he had been of the opinion that a kind of copartnership was developing between them, but that if Lindsay's idea of their relations between them was different, as his letter indicated, their various matters could be readily adjusted.

There were no further negotiations between them on the subject and Lindsay did not thereafter consent to be bound for any further advancements. There is nothing in the evidence to explain the purpose for which the subsequent advances by Randolph were made, except his general statement that the money was expended by him in pursuance of the agreement of October, 1906, and for the benefit of the Llanos company and that in paying out the several sums he relied on the promise of Lindsay to reimburse him to the extent necessary to make their advances equal. If any of the subsequent advances were made on account of obligations incurred before Lindsay's repudiation of the agreement, or in the completion of enterprises or transactions begun before and which could not be stopped, or abandoned without substantial loss, perhaps Lindsay would be liable to Randolph for one half thereof, under the agreement, notwithstanding his withdrawal therefrom. As to such matters he could not withdraw without a rescission. No rescission is pleaded in the answer and the evidence does not show an attempt to rescind. But there was nothing in the agreement that bound Lindsay to continue its existence longer than he chose. He could terminate it any time and thereupon he would be exempt from liability for future advances by Randolph for new deals or transactions. It was for Randolph to prove, if he could, that the advances subsequent to December 6th were made on account of previous obligations or previous uncompleted transactions or enterprises. The evidence is silent on the subject. The finding, so far as these items are concerned, is not sustained by the evidence.

Inasmuch as there must be a new trial, we consider it unnecessary to discuss or determine the other questions presented. They may not arise upon a second trial, and the issues may be changed.

The judgment and order are reversed.

Sloss, J., Angellotti, J., Lorigan, J., and Melvin, J., concurred.

Rehearing denied.