[Civ. No. 5497. Second Appellate District, Division Two.—September 24, 1929.]

THE SHIPLEY COMPANY, a Corporation, Respondent, v. THE ROSEMEAD COMPANY, a Common Law Trust, et al., Appellants.

R. D. Wickham and J. C. Cross for Appellants.

Edward Judson Brown and Minor Blythe for Respondent.

BURNELL, J., *pro tem.*—The complaint in this action is upon a promissory note in the ordinary and usual form,

executed by The Rosemead Company, a common law trust, and indorsed by the individual defendants. By way of answer the defendants, appellants here, admitting nonpayment, set up as an affirmative defense that prior to the execution of the note a building contract had been entered into by one Jones and the defendants for the erection of certain improvements by Jones on a specified lot; that Jones procured a vault to be built in the building under construction at a cost of $945, of which sum the defendants paid $230, and that a mechanic's lien was filed against the premises for the unpaid balance of $715. It is further alleged that the consideration for the note in question was the agreement of the plaintiff to pay off and satisfy said lien and that this agreement was not performed and hence that there was a failure of the consideration for which the note was given. By a supplemental answer they allege the execution of an agreement between plaintiff and themselves subsequent to the filing of their original answer, which, they assert, operated to fully satisfy all claims of plaintiff against them and to terminate its cause of action. On the issues so framed the court found that prior to the execution of the note plaintiff was the record owner of the lot, and "that certain persons without the knowledge or consent of plaintiff caused a certain vault to be constructed in said building at a cost of $945, of which sum these defendants paid $230, leaving a balance of $715 due for the construction of said vault, for which a mechanic's lien was filed against the real property of the plaintiff, which lien was still unsatisfied at the time of the execution of said note." The court further found: "That at the request of plaintiff the defendants executed and delivered to it the note . . . to reimburse it to the extent of the balance of $715, for which said lien was upon said property" and "That the said Shipley Company, as part consideration for said note, was to cause said lien to be discharged and cleared from its property, but that no specific time was agreed upon for so doing." The court also found: "That thereafter, and prior to the commencement of this action, the said Shipley Company caused the suit which was then pending to foreclose said lien to be dismissed, and that at the time of the filing of the complaint herein there was no longer any mechanic's lien upon said

property for the cost and construction of said vault or any part thereof.''

Upon the issue of the effect of the subsequent agreement as operating to satisfy respondent's claim and terminate its cause of action the finding was adverse to appellants.

Appellants urge that certain of the findings are not supported by the evidence and that the findings in turn fail to support the judgment and we are of the opinion that this contention must be sustained in the particulars to be pointed out herein.

We can find no evidence in the record to support the finding that the agreement to discharge the lien was *''part consideration''* for the execution of the note. No testimony whatever was offered by respondent, which, after introducing the note into evidence, rested. Mr. Bentel, one of the defendants, testified that about thirty days prior to the execution of the note there was a conference between Mr. Jones (admittedly president and owner of ninety-five per cent of the stock of the Shipley Company), Mr. Edeler and himself, at which Mr. Jones ''asked Mr. Edeler and I to give him a note that he could turn in to the Shipley Company, covering the amount of $715, which represented a lien that was on the building, . . . that if we gave this note they would—he could satisfy the Shipley Company that the transaction—in other words, the lien that was on the building would be paid by the Shipley Company. . . . '' Again, the same witness testified: ''At the time this note was given that was one of the representations, that they were to dismiss the lien.''

Mr. Edeler testified as to this same conference: ''We met concerning the disposition of the vault lien that had been filed and Mr. Jones said that he wanted us to give him a note, and when that was done, that he would discharge the lien, so the note was given.'' This was all the testimony adduced at the trial with respect to the consideration for the execution of the note. It establishes the fact that the *sole* consideration for the execution of the note was the discharge of the lien, and does not support a finding that the same was but part consideration.

The question we have just decided is important in view of appellants' contention that there was a *total* failure of consideration and hence that judgment should have been in

their favor. On this point it is their position that at the time of the commencement of the action on February 24, 1925, and up to the time their answer was filed on March 17, 1925, the lien had not been discharged and that it was not discharged until some eighteen months after execution of the note, or twelve months after the action thereon was commenced.

We have set forth the trial court's finding to the effect that the Shipley Company had procured the dismissal of the action to foreclose the lien and that at the time of commencing this action the lien no longer existed. This finding is not supported by any evidence at all. Strangely enough, neither party to the action saw fit to produce the best evidence of the date of discharge of the lien, namely, the official record thereof, but what meager testimony there is on this subject, together with the unchallenged statements of counsel at the trial, supports appellants' contention and is diametrically opposed to the finding. During Mr. Bentel's examination the court asked him: "Well, did the Shipley Company discharge this lien?" to which the witness replied: "The Shipley Company did not discharge the lien, and that is a part of our answer. They never paid the lien. It stood there and stood there and stood there . . . the lien was not discharged. They still held the note and they brought suit on the note, this suit that is now pending." Later on in the examination of the same witness he was asked whether he had a conversation with Mr. Jones as to the discharge of the lien, but before he could answer one of respondent's counsel interpolated: "Now, if your Honor please, I understand there isn't any dispute about the fact that the suit to foreclose the lien was pending and that suit has been dismissed." To this statement the court replied, "Well, that ought to be a matter of record here. Can't counsel agree whether the suit has been dismissed?" to which one of appellants' counsel answered: "Yes, your Honor, since this suit was brought, since our answers were in." Again, Mr. Bentel testified: "*The lien wasn't discharged for a year and a half after this transaction*" (referring to the execution of the note). (Italics ours.) Again, the court said: "He says the lien was not discharged for a year and a half, and the other side admits that it wasn't discharged until at least the time the suit was dismissed, so why ask him any more

about it? The fact is now established." During Mr. Edeler's examination he was asked about the discharge of the lien; before he could answer the question the court said: "No, that fact has already been covered. It has been admitted that the lien was never discharged until the action was dismissed and that it is a matter of record." This is all there is in the record before us upon this subject.

It being established by the uncontradicted evidence, despite the trial court's findings above discussed, that the sole consideration for the note was the agreement of respondent payee to discharge the lien and that this was not done until some eighteen months after the execution of the note and subsequent to the cause becoming at issue, we will next take up the question as to whether appellants' defense of failure of consideration should have been upheld. It is to be noted that there was at no time any dispute as to the amount for which the lien had been filed. The amount thereof was fixed, definite and certain. No time was specified within which the lien was to be satisfied and discharged by respondent, and the court so found. Manifestly, then, respondent's obligation, the consideration for the note, was to pay off the sum of $715. The time within which such an obligation is to be performed is thus specified in section 1657 of the Civil Code: "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly—as, for example, if it consists in the payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained."

On the authority of this code provision it was held in the following cases that the obligation was for immediate payment: *Peters* v. *George*, 1 Cal. App. 239 [81 Pac. 1117], where a widow and sole heir at law had sold property inherited by her from her husband's estate, for a down payment to her, the buyer agreeing to pay the balance to a creditor of the estate; *Whittier* v. *Gormley*, 3 Cal. App. 489 [86 Pac. 726, 727], where a memorandum evidencing a sale of land specified the purchase price as $5,500, "less commissions," without specifying a time for payment or the amount of commissions to be deducted. Quoting section 1657 of the Civil Code, the court said: "It follows therefore, that the money was payable upon delivery of the deed. The amount of com-

missions is susceptible of ascertainment and its certainty of amount is not disputed.'' *Clairmonte* v. *Napier Motor Co.*, 11 Cal. App. 265 [104 Pac. 712], holding commissions on sales of automobiles payable immediately on completion of each sale, and *Price* v. *Smith Mfg. Co.*, 53 Cal. App. 303 [200 Pac. 53], holding that under a contract whereby an inventor was to receive a royalty on each machine sold, with no provision as to time of payment, the agreed royalty became due immediately upon the sale of each machine.

In the case at bar we are constrained to hold that the obligation of respondent was to pay off and discharge the lien at once and that its failure to do so amounted to a failure of consideration for the note in suit. ■ A promissory note is, of course, a contract and as such one of its essential elements is ''a sufficient cause or consideration'' (sec. 1550, Civ. Code), and ''before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself'' (sec. 1439, Civ. Code). If, therefore, respondent's promise to pay off the lien could be regarded as a good consideration for the execution of the note by appellants, that consideration had failed upon failure of respondent to perform.

■ There exists an additional reason why, in our opinion, the judgment cannot stand, namely: that the findings affirmatively show a lack of any consideration whatever moving from respondent to appellants.

The court found that at the time of the construction of the vault ''the plaintiff was the record owner'' of the lot on which it was installed. It was further found that the vault was constructed ''by certain persons without the knowledge or consent of plaintiff'' (there is no finding that defendants or any of them had anything whatsoever to do with the building of the vault, or were in any way obligated to 'pay for it), and that the mechanic's lien ''was filed against the said real property of the plaintiff.'' It therefore appears from the findings that the ''consideration'' for appellants' executing the note was the discharge of a lien *on its own property* by appellants, a lien for which the findings do not state or even intimate defendants were in any way responsible or from the discharge of which they, or anyone except respondent itself, could benefit. Consideration is thus de-

fined in section 1605 of our Civil Code: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." ██ There can be no consideration where there is no benefit to the promisor or detriment to the promisee (*Bernstein* v. *Downs,* 112 Cal. 197 [44 Pac. 557]; *Visalia Gas etc. Co.* v. *Sims,* 104 Cal. 326 [43 Am. St. Rep. 105, 37 Pac. 1042]; *Gifford* v. *Carvill,* 29 Cal. 589). Some advantage, no matter how slight, must accrue to the promisor. (*Heim* v. *Butin,* 109 Cal. 500 [50 Am. St. Rep. 54, 42 Pac. 138]; *Jordan* v. *Scott,* 38 Cal. App. 739 [177 Pac. 504].)

The facts as found by the court below do not disclose, rather do they negative the existence of a good consideration for the note, as consideration is above defined.

The situation disclosed by the findings is somewhat akin to that in *Pacific Railways Advertising Co.* v. *Carr,* 29 Cal. App. 722 [157 Pac. 529, 530], where an advertising contract with the plaintiff had been executed on behalf of a corporation by its secretary, without any authority to do so. Under the contract the plaintiff claimed a sum of money to be due to it. Thereafter the defendant acquired an interest in the corporation and agreed to assume the indebtedness claimed to be due on the contract and as evidence thereof, executed her note to the plaintiff, and at the maturity of this note she, in renewal thereof, executed the note which was the subject of the action, whereupon the plaintiff released the corporation from liability on the original contract. The court there used the following language:

"The consideration for her note was the purported obligation of the company upon this contract; but there was no obligation, either express or implied. This being true, it cannot be said there was any consideration for the execution of the note sued upon. Clearly, if suit had been brought upon the contract against the Amritam Company, no recovery could have been had thereon upon a showing of the facts here presented. And if there was nothing upon which to base an action against the Amritam Company, it must follow that plaintiff, in releasing the company from liability

which did not exist, suffered no prejudice by reason thereof. A promise to perform a legal obligation is not a sufficient consideration for a contract based thereon. (*Sullivan* v. *Sullivan*, 99 Cal. 187 [33 Pac. 862].) Neither is the release of a purported claim against one upon whom there rests no legal or moral obligation to pay the same a sufficient consideration for a third party's promise to pay such nonenforceable claim, unless it be upon the compromise of a doubtful or disputed claim. At the time of executing the note there existed no dispute between plaintiff and the Amritam Company. . . . ''

We are not unmindful of the finding ''that it is not true that there was no consideration for the execution of said note,'' but we regard this finding as in the nature of a conclusion of law as to the legal effect of the specific facts found with regard to the transaction between the parties rather than as a finding as to a matter of fact. (*Kriess* v. *Faron*, 118 Cal. 142 [50 Pac. 388].) We hold, therefore, that the findings do not support the conclusions of law or the judgment based thereon and that the judgment should have been in favor of the defendants.

With respect to the finding as to the effect of the subsequently executed agreement between the parties, we are satisfied that it is amply supported by the evidence and that appellant's point with regard thereto is not well taken, but as the case is disposed of by our ruling on the other points in controversy it is unnecessary to further discuss the question.

The judgment is reversed, with directions to the trial court to enter judgment for the defendants, with costs.

Works, P. J., and Craig, J., concurred.