[Civ. No. 16242.   Second Dist., Div. Three.   Apr. 1, 1949.]

DAVID GRANT, Respondent, v. THE AERODRAULICS COMPANY (a Copartnership) et al., Appellants.

Irwin M. Fulop, Ralph B. Herzog and Benjamin D. Mathon for Appellants.

Grivi & Norris for Respondent.

SHINN, P. J.—This is an appeal by The Aerodraulics Company, a copartnership, and its members both as partners and

individually, from a judgment on the pleadings awarding David Grant the sum of $7,000 and cancelling a contract between the parties. It appears to be conceded by both parties that cancellation was properly decreed, and the only substantial question before us concerns the correctness of the money award.

The second paragraph of plaintiff Grant's complaint sets forth *in haec verba* the terms of a written contract, dated November 8, 1943, whereby plaintiff granted to defendant partnership (herein referred to as the company) an exclusive world-wide license to produce and sell for commercial use only a hydraulic unloading valve invented by plaintiff. By the terms of this contract the company was obligated to apply for and procure a patent upon the device at its own expense, "to diligently exploit, manufacture, use and sell said valve for commercial purposes," and to take reasonable measures to promote its use and sale. The company further was required to pay plaintiff as "a minimum guaranteed royalty for said exclusive license for commercial use only, the sum of TEN THOUSAND DOLLARS ($10,000.00), whether sales of said valve be made or not." This so-called "primary royalty" was to be payable in stated installments pending the outcome of the patent application, with the balance thereof to become immediately due and payable when letters patent were issued by the United States Patent Office. An additional "reserve royalty" based on net sales was also provided for.

In respect to termination of the license, the contract contained the following provisions:

"12. In the event of the default of any payments of Primary Royalty due or to become due from Company to Inventor by virtue of this agreement, or in the event of default by the Company in the performance of any of the covenants herein contained, the entire consideration due hereunder shall become due and payable to Inventor forthwith, without further notice, and the Inventor may sue for and collect the entire indebtedness due him hereunder, and may further, at Inventor's sole option, upon giving notice to the Company in writing, and by depositing the same in the United States mails, cancel and revoke this license, and all rights of the Company hereunder shall then cease and terminate. . . .

"13. Company may not terminate or revoke this Agreement unless the basic design of said invention is unworkable and cannot be used advantageously, or unless an infringement search discloses that said invention infringes or conflicts

with a patent previously filed in the United States Patent Office, or that said invention is not patentable. In such case as set forth herein, Company may cancel this Agreement upon giving notice in writing to the Inventor, and shall pay to Inventor any 'reserve royalty', on sales made by Company for commercial use. In the event of cancellation by Company Inventor shall retain all payments previously made to him and Company shall have no right to reimbursement thereof.''

As the first of two separate causes of action, the complaint alleges that letters patent were issued in respect to the said valve on May 8, 1945; that the balance of the sum of $10,000 as provided in the contract then became due and payable; that defendants have paid $3,000 thereon, leaving a balance of $7,000 due, owing, and unpaid; and that demand in writing for said sum has been made, but defendants have failed and refused to pay said sum in whole or in part. The second cause of action, which was for cancellation of the contract, alleges that the company has failed and refused to perform the provisions of the contract for the manufacture and sale of the valve, and is in default in payment of the primary royalty; and that because of said defaults, plaintiff, on August 15, 1946, gave the company written notice of election to terminate the contract.

By their answer, defendants admit the execution and terms of the written contract as pleaded by plaintiff; admit the issuance of letters patent for plaintiff's device on May 8, 1945; admit the contractual obligation to pay $10,000 guaranteed royalty; admit payment of $3,000 to plaintiff and demand by plaintiff in writing for $7,000; admit that they have not entered into manufacture and sale of the said valve; and admit that plaintiff gave written notice of election to terminate the contract on August 15, 1946. Defendants deny, however, that they are indebted to plaintiff, and as an affirmative defense, allege the following: ''That during the summer of 1945 plaintiff·and defendants orally agreed that in consideration of the payment by the Aerodraulics Company to plaintiff of the sum of One Thousand Dollars ($1000.00), payable Five Hundred Dollars ($500.00) at said time and Five Hundred Dollars ($500.00) in the month of October, 1945, that said agreement described in Paragraph II of plaintiff's complaint, should thereupon be cancelled, terminated and of no further force and effect whatsoever; that The Aerodraulics Company paid to plaintiff at said time the sum of $500.00, and on or about the 17th day of October, 1945

72

tendered to plaintiff the additional sum of $500.00, as in said agreement provided which sum plaintiff refused to accept.''

As a second affirmative defense, the answer quotes paragraph 13 of the contract as set forth above, alleges that ''the basic design of plaintiff's invention is unworkable and cannot be used advantageously,'' and alleges that on that ground a written notice of election to cancel the contract was given plaintiff on November 13, 1945.

At the trial, prior to the introduction of any evidence, plaintiff moved for judgment on the pleadings. After argument thereon, defendants moved for leave to amend their answer, which motion was denied and judgment rendered on the pleadings in favor of plaintiff.

The legal principles which must govern our determination as to the correctness of the decision below are not in dispute. It is elementary that a plaintiff is not entitled to judgment on the pleadings if the answer presents any issue as to the material allegations of the complaint, or if it sets up affirmative matter constituting a defense. (21 Cal.Jur. 237-8.) A motion for judgment on the pleadings is in the nature of a general demurrer, and the trial court in ruling thereon must treat the allegations of the challenged pleading as true. (*MacIsaac* v. *Pozzo*, 26 Cal.2d 809 [161 P.2d 449], and cases cited; 21 Cal.Jur. 240.)

We have given consideration to the provisions of paragraph 13 of the agreement which extended to defendant the privilege of cancelling the agreement in certain events, among which was the contingency that the basic design of the invention should be found to be unworkable and incapable of being used advantageously. In view of the allegation in the second affirmative defense that the agreement was cancelled by the company for this reason under the provisions of paragraph 13, the question arises whether such provisions for cancellation were intended to operate retrospectively so as to relieve the company from the duty to pay the unpaid portion of the minimum guaranteed ''primary royalty.'' As we have seen, the balance of the minimum guaranteed royalty had accrued upon issuance of letters patent in May, 1945, and some six months had elapsed thereafter before the company gave notice of termination pursuant to the provisions of paragraph 13. Construing the allegations of the second affirmative defense in the light most favorable to defendant, we nevertheless cannot give a construction to paragraph 13 which would allow the defendant to escape liability for a minimum

royalty that had already accrued. The words "terminate," "revoke" and "cancel," as used in the context of paragraph 13 in reference to the written agreement, all have the same meaning, namely, the abrogation of so much of the contract as might remain executory at the time notice is given, and must be sharply distinguished from the word "rescind," which appears nowhere in the paragraph, and which conveys a retroactive effect, meaning to restore the parties to their former position. (*Sanborn* v. *Ballanfonte*, 98 Cal.App. 482, 488 [277 P. 152]; *Winton* v. *Spring*, 18 Cal. 451, 453; *Young* v. *Flickinger*, 75 Cal.App. 171, 174 [242 P. 516].) According to the settled rule of construction, "the exercise of an option to terminate prevents liability for further transactions but does not affect obligations which have already accrued." (17 C.J.S., Contracts, § 404, p. 893, and cases cited; see, also, *Mile* v. *California Growers Wineries, Inc.*, 45 Cal.App.2d 674, 679 [114 P.2d 651]; *Randolph* v. *Lindsay*, 158 Cal. 727, 730 [112 P. 300].)

Analysis of the provisions of paragraph 13 makes it clear that the parties intended the usual construction of such clauses to obtain. In the event of termination of the agreement by the company, it would have remained obligated by the express terms of paragraph 13, to pay any "reserve royalty" that had accrued on account of sales, and this, we think, indicates an intention of the parties to give these provisions of the agreement only prospective operation. Why should the company have been obligated to pay reserve royalties and yet have been excused from payment of the guaranteed minimum primary royalty which fell due unconditionally upon issuance of the letters patent? It would appear to have been in the minds of the parties that each would render full performance up to the time of the exercise of the company's option to terminate the agreement, and that if the termination took place after the issuance of the letters patent it would necessarily also take place after the minimum royalty had been fully paid. The last sentence of the paragraph reads: "In the event of cancellation by Company the Inventor shall retain all payments previously made to him and Company shall have no right to reimbursement therefor." In giving proper effect to this provision, we think the company must be deemed to have paid the balance of the minimum royalty at the time it fell due, and that it was not the intention of the parties that the company could escape liability for matured royalty obligations by the mere device of not meeting them.

We therefore construe the paragraph as a whole to mean that in the event of termination of the agreement by the company plaintiff would be entitled to retain all moneys that had been paid to him and also to obtain all past due amounts which the company had failed to pay. In its answer it was alleged only that notice of termination was given in November, 1945. It is clear that the termination of the agreement by the company in November could not of itself have relieved the company of its obligation to pay the balance of the minimum guaranteed royalty which accrued in the preceding month of May.

It is evident from what has already been said that the primary issue for our consideration is whether, assuming all the allegations pertaining thereto to be true, the oral agreement to terminate the written contract, as set forth in defendants' answer, constitutes a valid defense to the action. In passing, it may be observed that the only alleged effect of the oral agreement was that the written contract "should thereupon be cancelled, terminated and of no further force and effect whatsoever." The answer nowhere alleges that the oral agreement purported to effect a cancellation or release of the admitted indebtedness of $7,500 then due, for the unpaid balance of which the action was brought by plaintiff, and on this ground might well be open to demurrer for uncertainty. Since, however, this objection might have been cured by an appropriate amendment, we shall for the purposes of our decision, resolve any uncertainty in favor of defendants and shall assume that the $7,500 debt was intended by the parties to be cancelled by the alleged oral agreement, or by full performance thereunder by the company. This assumption is one which is highly favorable to defendants.

At the outset, we may dispose of respondent's argument that since the alleged agreement to terminate was not in writing, and was not fully executed, it was, under the provisions of section 1698 of the Civil Code, completely ineffective to accomplish its purported purpose. Section 1698 provides that "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." A well-recognized distinction in meaning exists between the alteration and the termination of a contract.

An "alteration" is a modification or change in one or more respects which introduces new elements into the details of the contract, or cancels some of them, but leaves the general purpose and effect undisturbed. (40 C. J. 1486; see *Guidery* v.

*Green,* 95 Cal. 630, 634 [30 P. 786] ; *Cross* v. *Ramdullah,* 9 Cir., 274 F. 762, 767.) ■ To "terminate" a contract, on the other hand, means to abrogate so much of it as remains unperformed, thereby doing away with the existing agreement upon the terms and with the consequences agreed upon. (*Sanborn* v. *Ballanfonte,* 98 Cal.App. 482, 488 [277 P. 152], and cases cited.) ■ This distinction has been frequently applied by the California courts, and it is now well settled that the termination or abrogation of a written contract may be achieved by an óral agreement. whether executed or not, and that in such a case section 1698 of the Civil Code has no application. (*McClure* v. *Alberti,* 190 Cal.. 348, 350 [212 P. 204] ; *Pearsall* v. *Henry,* 153 Cal. 314, 325 [95 P. 154] ; *San Roque Properties, Inc.* v. *Pierce,* 18 Cal.App.2d 379, 380 [63 P.2d 1198] ; *Klein Norton Co.* v. *Cohen,* 107 Cal.App. 325, 331 [290 P. 613].) Language to the contrary which may be found in *Mulrooney* v. *Pietro,* 79 Cal.App.2d 311 [180 P.2d 62], upon which respondent places reliance, is not only unsupported by citation of authority but is opposed to the otherwise uniform rule of the California decisions.

■ An oral cancellation, however, is subject to the rules concerning contracts in general and hence must be supported by a sufficient consideration to be enforceable. (*Haberman* v. *Sawall,* 72 Cal.App. 576, 582 [237 P. 776] ; *Hooke* v. *Great Western Lumber Co.,* 54 Cal.App. 681, 683 [202 P. 492].) ■ Construing the affirmative defense most favorably to defendants, it appears that the consideration for plaintiff's agreement to terminate the contract and cancel the undisputed debt of $7,500 then due consisted of the payment of one thousand dollars in two equal installments, and a release by the company of all its rights under the contract. Since the amount of the indebtedness was undisputed, however, payment by the company of the lesser sum of $1,000 could not constitute a valid consideration for its cancellation, or for the termination of plaintiff's contractual rights against the company. (Civ. Code, § 1605; *Moore* v. *Bartholomae Corp.,* 69 Cal.App.2d 474, 478 [159 P.2d 436] ; *Rogers* v. *Rogers,* 49 Cal. App.2d 366, 369 [121 P.2d 819] ; *Gordon* v. *Green,* 51 Cal.App. 765 [197 P. 955]; Rest., Contracts, § 76(a); 1 Williston on Contracts (rev. ed.) § 120.) "It is an uniform rule of law that a consideration for an agreement is not adequate when it is a mere promise to perform that which the promisor is already legally bound to do." (*General Motors Accept. Corp.* v. *Brown,* 2 Cal.App.2d 646, 650 [38 P.2d 482].)

Appellants contend that ample consideration may be found in the termination of their exclusive world-wide license to manufacture and sell plaintiff's invention. It may be conceded that, as a general rule, a mutual cancellation of executory contractual rights is supported by a valid interchange of consideration. (*Sistrom* v. *Anderson,* 51 Cal.App. 2d 213, 219 [124 P.2d 372] ; *Haberman* v. *Sawall, supra,* 72 Cal.App. 576, 582; *Hooke* v. *Great Western Lumber Co., supra,* 54 Cal.App. 681, 683; Rest., Contracts, § 406 and com. a; 1 Williston on Contracts (rev. ed.) § 102A, pp. 327-8.) However; in the foregoing cases and others cited by appellants, the rights which were yielded up were unquestionably of value to the respective parties, and since each was legally privileged to continue to assert those rights prior to the cancellation agreement, each suffered a legal detriment in giving them up.

The facts pleaded by appellants in the present case present an entirely different situation, in which the authorities cited by them are not controlling, for two reasons. First, the elementary rule that a court of law will not inquire into the adequacy of consideration for a contract (see *Taylor* v. *Taylor,* 66 Cal.App.2d 390, 398 [152 P.2d 480] ; *Gerson* v. *Kelsey,* 4 Cal.App.2d 158, 162 [40 P.2d 543, 43 P.2d 266] ; Rest., Contracts, § 81) does not preclude the necessity of a showing that the consideration has some value at least. (See Rest., Contracts, § 80, com. a; *Gifford* v. *Carvill,* 29 Cal. 589, 593. *Cf., Shipley Co.* v. *Rosemead Co.,* 100 Cal.App. 706, 713 [280 P. 1017].) It is well settled that something which is completely worthless cannot constitute a valid consideration. (*Gifford* v. *Carvill, supra*; *Pacific Rys. Advertising Co.* v. *Carr,* 29 Cal.App. 722 [157 P. 529] ; *Schwartz* v. *Bohle,* 47 Cal.App. 445 [190 P. 819] ; *Shortell* v. *Evans-Ferguson Corp.,* 98 Cal.App. 650 [277 P. 519] ; *Blyth* v. *Robinson,* 104 Cal. 239 [37 P. 904].) In accordance with this rule, it has been held that want of consideration is a good defense to an action on a note given in return for the assignment of valueless rights in an invention (*Craddick* v. *Emery,* 93 Wash. 648 [161 P. 484]), or to an action on a contract for the sale of a void and worthless patent (*Herzog* v. *Heyman,* 151 N.Y. 587 [45 N.E. 1127, 56 Am.St.Rep. 646]).

It was not alleged in the answer that the rights surrendered were of any value nor were any facts alleged from which it could be reasonably inferred that they were of value.

In the second place the answer wholly failed to show that plaintiff received any benefit from the surrender of the license. The company was in default; there was no question or dispute about it. Plaintiff was privileged to cancel and revoke the license by mailing notice to defendants. The answer did not allege that the company was claiming its default to be excusable or that it had been waived by plaintiff; nor were any facts alleged which indicated that plaintiff had waived his right to terminate the license. It cannot be presumed that plaintiff would have been satisfied with continued non-performance by the company or that he would not have given notice of termination if the company had not voluntarily surrendered the license. Since plaintiff's acceptance of the surrender of the license indicated his dissatisfaction over defendants' failure to perform, the giving of notice of termination under the circumstances would have been an unnecessary act as to each of the parties.

Appellants cite *White* v. *Lee,* 3 F. 222, and other cases, in which it was held that where a licensing agreement gave the licensor the right to terminate the license for breach by the licensee, the agreement continued in force until the licensor exercised his right by giving notice, and the mere breach of the agreement by the licensee did not ipso facto put an end to the license. This is not the question. We are considering only the fact that plaintiff could have terminated the agreement by notice mailed to the company, which would have amounted to exactly the same thing as the surrender of the license. It is suggested that the surrender of the license placed plaintiff in a position where he could deal with others, or manufacture the device himself, free from interference by defendants; that it must therefore be considered that plaintiff derived some benefit from the surrender. No such possible benefits were alleged, and if there has been such, plaintiff was free to take advantage of them without the consent or assistance of defendants. It would be fanciful to hold that plaintiff received a benefit through the actions of defendants, who had nothing in the way of a benefit that they could rightly withhold from him, and therefore had nothing to give. Accordingly, we hold that the alleged oral agreement was not supported by "a sufficient cause or consideration" (Civ. Code, § 1550) and could not constitute a valid defense to the action.

Defendants urge that the denial of their motion for leave to amend was an abuse of the trial court's discretion

which would justify a reversal of the judgment. The amendment should have been allowed unless it appeared on the face of the answer that it was incapable of proper amendment. (See *King* v. *Mortimer,* 83 Cal.App.2d 153 [188 P.2d 502], and cases cited.)

Reviewing courts are somewhat disposed to discover sufficiency in a pleading where refusal of the right to amend it may result in a miscarriage of justice, particularly so when a party has not been given an opportunity to try his case on the merits. But, even so, it is true also that if plaintiff here is clearly entitled to the judgment which was awarded him, its benefits should not be withheld from him upon the mere possibility that defendants may have a defense to his demands other than the one they have pleaded. At no time either in their pleadings or briefs have defendants alleged or suggested any fact which, taken with the facts they have admitted, would enable them to show a legally sufficient consideration, consisting of value passed or detriment suffered by reason of the alleged oral agreement. In view of our conclusions, we are of the opinion that the answer was incapable of amendment to state a valid defense.

In considering the claim that a miscarriage of justice has occurred we deem it proper to refer to a proposed amendment to the answer found in defendants' closing brief and which, it is said, would have been filed had permission been granted. This proposed amendment contains no allegation with respect to a consideration for the oral agreement which adds anything to the original allegations, and it is subject to the same fatal objections as the original pleading. We should not assume that defendants could file a better answer than the one they exhibited to us in their brief as their proposed amended answer. We cannot see how the answer could have been amended consistently with defendants' admissions and allegations of fact, so as to allege a consideration for the oral agreement. The court did not err in denying leave to amend.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 26, 1949.