[Civ. No. 927. Fourth Appellate District.—August 29, 1932.]

A. E. DAVIES, Appellant, v. UNION TRUST COMPANY OF SAN DIEGO (a Corporation) et al., Respondents.

594

L. E. Tripp for Appellant.

T. A. Turner, Hamilton, Lindley & Higgins and Edward W. Goodman for Respondents.

JENNINGS, J.—Plaintiff instituted this action on behalf of himself and four other beneficiaries under a certain declaration of trust for the purpose of securing declaratory relief as well as injunctive relief against the trustee in accordance with the provisions of section 1060 of the Code of Civil Procedure. From a judgment denying the relief sought and in favor of defendants, plaintiff prosecutes this appeal.

The appeal is taken on the judgment-roll alone. Therefore, whatever facts may be herein set forth for the purpose of establishing a background conducing to a clearer understanding of the points involved herein are necessarily taken from the findings of the trial court and from the pleadings.

From the record thus provided it appears that prior to August 2, 1926, defendants, Harry F. Carling and F. B. Zieglar were the owners of a tract of land in San Diego County. Plaintiff and his four associates proposed to buy the land for the sum of $315,000 intending to subdivide it and hoping that, from the sales of lots and parcels in the subdivision a sufficient amount would be realized from which to pay the purchase price and yield to them a profit on the undertaking. The owners of the land con-

veyed the tract to the defendant Union Trust Company of San Diego. No consideration was paid by the company for the conveyance. Thereupon, on August 2, 1926, an elaborate declaration of trust was executed by defendant Union Trust Company and written approval, ratification and confirmation of its terms were made by the owners of the property and by plaintiff and his associates. In this instrument, the owners, Carling and Zieglar, were designated ''Payees'', the former being more specifically designated ''1st Payee'' and the latter ''2d Payee''. Plaintiff and his four associates were designated ''Class B Beneficiaries''. It was provided that the class B beneficiaries should enter into possession of the property and embark upon a sales campaign. The enterprise was not attended with the success which had been anticipated. The sum of $33,527 was realized from the sale of lots in the tract but, as time passed, the class B beneficiaries defaulted in the payment of two installments due to be made on the principal of the purchase price. The first of these installments was due on February 2, 1928, and amounted to $61,500. The second installment, amounting to $72,500, was due on February 2, 1929. Interest on the principal sum was not paid as provided. County taxes assessed against the property aggregating approximately $83,000 exclusive of penalties were allowed to become delinquent and further taxes, assessed by the irrigation district in which the property is located amounting to approximately $13,900 were not paid and became delinquent. In this state of affairs, the owners of the property elected to utilize the machinery set up by the declaration of trust for foreclosure of the beneficial interest of the class B beneficiaries. On March 16, 1929, they gave written notice of default and exercised their option to declare all sums secured by the declaration of trust to be immediately due and payable. Thereafter, they gave notice of sale, as required by the trust declaration, announcing that on July 1, 1929, all beneficial interest of all beneficiaries would be sold. The present action was instituted about June 13, 1929. By it, in addition to declaratory relief, an injunction was sought, restraining the Union Trust Company as trustee from proceeding with the proposed sale pending the trial of the action. Plaintiff's prayer for an injunction *pendente lite* was denied and the

sale took place. At this sale the beneficial interest of plaintiff and his associates was sold for the sum of $150,000. At the conclusion of the trial of the action, the court found that, at the time the sale was made, the sum of $267,940.26 was due on the principal and interest of the trust indebtedness. The proceeds of the sale amounting, as above noted, to $150,000 was applied on the amount of principal and interest remaining due on the trust indebtedness, leaving a balance of $117,940.26. The court also found that a total sum of $107,827.80, exclusive of penalties, was required to pay the various taxes which had been allowed to become delinquent. Judgment was thereupon rendered denying to plaintiff the relief sought by him and in favor of defendants, Carling and Zieglar, on their cross-complaint for the sum of $225,767.96.

The first contention advanced by appellant is that the court was not authorized to render a deficiency judgment in any amount against him. It is urged that, to support a deficiency judgment, it must first appear that there is a personal liability on the part of the one sought thus to be charged. This statement is not challenged by respondents. ■ The problem which is here presented, therefore, is to discover whether there is such personal liability. The solution of this problem depends upon the interpretation of the declaration of trust since it appears that no collateral instrument evidencing the indebtedness mentioned in the trust declaration was executed by appellant. This instrument which commences with a recitation that the Union Trust Company of San Diego has received a deed conveying to it certain particularly described land as trustee for which no consideration was paid by it then refers to a certain debt of $35,000 owing to Carling, first payee from Zieglar, second payee evidenced by seven promissory notes of $5,000 each, payment of which may be made personally or from proceeds received from sales of the trust property. The instrument then contains the following language: ''Whereas, a certain debt in the principal sum and known as the Principal Indebtedness hereunder, of Three Hundred Fifteen Thousand Dollars ($315,000.00) is owing under this Trust by John B. Zeller, John W. Waybright, A. E. Davies, Ed. F. Gilbert and M. Reiss, Class 'B' Beneficiaries hereunder, to Payees hereunder, payable to said Payees

as their interest hereafter appear, and as follows: The sum of $61,500.00 on or before eighteen (18) months after the date hereof; The sum of $72,500.00 on or before thirty (30) months after the date hereof; The sum of $72,500.00 on or before forty-two (42) months after the date hereof; The sum of $108,500.00 on or before fifty-four (54) months after the date hereof; with interest on all deferred payments at six per cent (6%) per annum, payable quarterly; and whereas all of the foregoing indebtedness is secured by the Entire Beneficial Interest hereunder as hereinafter provided, said Beneficial Interest being segregated and divided into Class 'A' and Class 'B' . . . '' █ It is not disputed that the above-quoted language amounts to an acknowledgment of indebtedness but it is said that it is not a promise to pay the amount specified and that no personal obligation to pay can be made out of it. It must be conceded that in the language above quoted and throughout the instrument studious effort was made to avoid a clear covenant on the part of appellant and his associates to pay the indebtedness which is acknowledged to exist. However, in section 4 of the instrument there is an express covenant on the part of all beneficiaries under the declaration to protect the trust property from loss, damage, liability and expense, to permit no waste or deterioration and to pay for any improvements that may be made outside the purview of a certain road district improvement act. Section 6 of the instrument contains a further covenant expressed in the following language: ''provided further that should said Basic Prices, together with any other payments made to Trustee for Payees not equal the instalments of said principal indebtedness as said instalments become due, then all the Beneficiaries hereunder jointly and severally agree to pay such additional sums to Trustee for Payees as may be necessary in order to enable the payment of such instalments to be made; provided, that all Basic Prices shall be paid to Payees in instalments as received by trustee''. In section 10 of the instrument is to be found the following language: ''Should said property, or any part thereof, or the proceeds from any sale made become liable for payment of any inheritance, income or other tax, lien or assessment, which beneficiaries hereby jointly and severally agree to pay five

(5) days before delinquency, Trustee is authorized to withhold and pay said tax, lien, or assessment out of any moneys in its possession for account of the person whose interests hereunder are so liable, unless the same has been paid." Here again is an example of the studious effort obviously made to avoid a definite promise on the part of beneficiaries to pay the taxes. Nevertheless, despite the evasiveness of the terminology employed, we apprehend that it can hardly be contended that there is not a distinct covenant to pay taxes and assessments five days prior to delinquency. We know of no rule of law that requires an acknowledgment of debt to be expressed in the formal phraseology of a promissory note. The word "debt" has a recognized meaning. In Webster's International English Dictionary it is defined as "that which is due from one person to another, whether money, goods, or services; that which one person is bound to pay to another, or to perform for his benefit". The Century English Dictionary defines the term in language practically identical with that above quoted. Bouvier's Law Dictionary defines it as follows: "Debt. In Contracts—'A sum of money due by certain and express agreement,'" citing 3 Bl. Com. 154. In *Perry* v. *Washburn*, 20 Cal. 318, 350, it is said "A debt is a sum of money due by contract, express or implied. . . . The term debt, it is true, is popularly used in a far more comprehensive sense, as embracing not merely money due by contract, but whatever one is bound to render to another whether from contract or the requisites of the law." It is to be observed that the language of the trust declaration recites that a certain debt is "owing" by appellant and his associates to payees, "payable" to payees. The word "owing" is defined in Bouvier's Law Dictionary as "something unpaid". The word "payable" means "to be paid". We may therefore paraphrase the language of the instrument as follows: Whereas, a certain sum of money in a specified amount is due and is unpaid by certain named individuals to payees, to be paid to them. Thus paraphrased the language contains an unequivocal acknowledgment of a present, existing indebtedness to be paid in certain designated installments. It is our opinion that the trial court was warranted in construing it as amounting in effect to an agreement to pay the sum specified. We are the more

persuaded to this conclusion by the language contained in section 6 of the declaration, wherein the beneficiaries jointly and severally agree that if moneys received by the trustee do not equal the installments of the principal indebtedness as they become due, they will pay such additional sums as may be necessary in order to enable payment of such installment to be made. Here is language susceptible of no other construction than that of a definite covenant and promise to pay. It is conceded that, if the declaration of trust is capable of being interpreted as containing a promise on the part of appellant and his associates to pay the sum specified, a judgment against appellant for the balance due after application of the proceeds of the sale of the beneficial interest of all beneficiaries was warranted.

■ The second contention advanced by appellant is that the judgment of the court denying to appellant recovery of lots having a release value of $43,092.77 or a money judgment in this sum is incorrect since it is maintained that the pleadings of respondents, themselves, show that appellant was entitled to the relief stated. In this connection it is pointed out that respondent Carling, in an amendment to the answer originally filed by him and his co-defendant Zieglar admitted that a credit of $55,000 to be applied on payment of the principal and of $5,000 to be applied on payment of interest was allowed by said respondents to appellant and his associates in the month of November, 1927, and that payment of the sum of $21,700.99 had been made prior to this time. The declaration of trust provides that the first installment of principal in the amount of $61,500 shall be made on or before eighteen months from August 2, 1926, the date on which the declaration was executed. The due date of this first installment was therefore February 2, 1928. It is alleged in appellant's complaint that lots having a basic release price of $33,527 were released by respondents and since, as contended, respondents by their pleadings admit receipt of $76,619.77 on account of the principal indebtedness prior to and during the month of November, 1927, at which time there had been no default in payment of any installment, therefore, under the terms of section 6 of the declaration of trust, appellant and his associates were entitled to have released to them lots of a basic value of $43,092.77. Section 6 of the

600

declaration is, in part, in the following language: "Provided no default then exists hereunder, and after all costs, fees, expenses and advances of trustee with interest and all damages sustained by it have first been paid, the parties hereto agree that any and all parcels, lot or lots may be conveyed by trustee free and clear of all obligations upon payment to trustee of an agreed upon sum, known as the basic price, to be calculated for said purpose upon the basis of one hundred twenty-five per cent (125%) of the sum of three hundred fifteen thousand dollars ($315,000.00) for the entire tract of land, said sum to be prorated against the lots of said subdivision according to the area contained therein, it being agreed that said trustee be and it is hereby authorized to convey said lots or parcels of said property upon payment to it for payees of the proportional part of the balance of said basic price." Since, therefore, there had been no default in November, 1927, it is argued that appellant and his associates at that time acquired the right, by virtue of the admitted payment of $76,619.77, to have lots of a basic value, as this term is defined in said section 6, released to them. But it does not so clearly appear that the allegations of the amendment to the answer admit that the payment of $21,700.99 was made prior to November, 1927. The language of the pleading with reference to this payment is as follows: "Deny that said Harry F. Carling . . . have been paid upon the principal of said trust indebtedness owing them, the sum of $76,619.77 or any other sum in excess of $21,700.99." Nor does it conclusively appear that it is admitted in the amendment to the answer that a credit of $60,000 to apply on principal and interest of the trust indebtedness was allowed in November, 1927. It is ' alleged in the pleading referred to that "on or about November, 1927", appellant and his associates proposed to sell respondents, Carling and Zieglar, a certain trust deed note and trust deed concerning which certain representations alleged to have been false were made by appellant and his associates upon which representations it is alleged respondents relied and by reason whereof they were induced to enter into the transaction and to accept the note and trust deed at the value of $60,000. While, therefore, it may be conceded that it is admitted by the pleading that, at some time during the month of November,

1927, appellant and his associates made the proposal to sell the note and trust deed for a credit of $60,000, it cannot be conceded that it is therein admitted that the acceptance of the offer by respondents Carling and Zieglar took place in November, 1927. For all that appears it may have taken place at a much later date. It is significant· that the court simply found that respondents, Carling and Zieglar, had acknowledged receipt of payment of the sum of $76,619.77 on account of the trust indebtedness which was derived from proceeds of sales of property under the trust. We are entitled to assume that the court's finding in this regard is supported by evidence presented during the trial of the action. At all events, the contention that the pleadings contain admissions that payment of the specified sum was made at a time when no default existed is not well taken for the reasons suggested. Further, even if it be conceded that appellant's contention in this regard is correct, further difficulty is encountered in arriving at the conclusion that the court erred in refusing to declare that appellant and his associates were entitled to have lots of a release value of $43,092.77 deeded to them or a judgment in money for such amount. In this connection, appellant relies upon the provisions of section 6 of the declaration of trust. The first part of this section, as hereinabove noted, declares that, providing no default exists, the parties agree that any and all parcels, lot or lots, may be released by the trustee upon payment of the basic price. It is, however, provided in a subsequent portion of section 6 that the trustee is authorized to release any lot or parcel of the property *as and when required* (italics ours) so to do by the class "B" beneficiaries. It will be remembered that appellant and his associates were designated in the trust declaration class "B" beneficiaries. It is clear, therefore, that the class "B" beneficiaries were required to make a demand for the conveyance of lots as a prerequisite to the establishment of a duty on the part of the trustee to release such lots from the trust. Nowhere in the record is there any indication or suggestion that any evidence of such demand was presented to the trial court. It is alleged in the complaint that appellant, on behalf of all class "B" beneficiaries, had demanded that the trustee release lots in accordance with the provisions of the trust declaration

and that at the time of the demand no default existed under the declaration of trust. The answers filed by respondent Union Trust Company of San Diego and respondents, Carling and Zieglar, contain specific denials that appellant, either for himself or on behalf of his associates, had demanded a release of lots by the trustee. The court found that no demand for the release of lots had been made by appellant on behalf of the class "B" beneficiaries or for any other person, or for himself. The fact of demand was therefore a fact in issue at the trial and we must assume that the court's finding that no demand had been made was supported by the evidence produced at the trial. It is obvious that the right of the class "B" beneficiaries to have lots released from the trust depended upon their making a demand upon the trustee for such release, and the rule is well settled that, under such circumstances, it must be shown that the demand was made (*Vickery* v. *Maier*, 164 Cal. 384 [129 Pac. 273]; *Danielson* v. *Neal*, 164 Cal. 748, 750 [130 Pac. 716]; *Flickinger* v. *Heck*, 187 Cal. 111 [200 Pac. 1045]; *California Canneries Co.* v. *Great Western Lumber Co.*, 44 Cal. App. 69 [185 Pac. 1008, 207 Pac. 908]).

The judgment is affirmed.

Marks, Acting P. J., concurred.