[L. A. No. 12896. In Bank.—June 20, 1933.]

L. G. WEIDNER, Plaintiff and Appellant, v. FRANK B. ZIEGLAR et al., Defendants and Appellants.

L. G. WEIDNER, Plaintiff and Appellant, v. UNION TRUST COMPANY OF SAN DIEGO (a Corporation), Respondent.

Harrison G. Sloane for Plaintiff and Appellant.

Hamilton, Lindley & Higgins for Defendants and Appellants.

Albert J. Lee, Charles H. Forward and Harold R. Conklin for Respondent.

THOMPSON, J.—Prior to August 2, 1926, the defendants Frank B. Zieglar and Harry F. Carling were the owners of a tract of land in San Diego County, which property John B. Zeller, M. Reiss, Ed. F. Gilbert, John W. Waybright and A. E. Davies desired to purchase for the purpose of subdividing into smaller parcels and selling. With this purpose in view the land was deeded to the Union Trust Company of San Diego and a declaration of trust executed by all the parties. In brief, it provided for an adjustment of certain differences of interest between the former owners, Zieglar and Carling, who were designated in the instrument as payees, and for a class of beneficiaries, designated as class "A", to the extent of $125,000, which beneficial interests it was provided might be sold to purchasers, but until so sold should belong to the class "B" beneficiaries, who were the purchasers already named. It was also declared, after making provision for payment of the purchase price, improvements, expenses and a designated profit to the class "A" beneficiaries, that the class "B" beneficiaries should share equally with class "A" beneficiaries in the anticipated profits. In other words, and solely to make the arrangement clear, the class "B" beneficiaries were to guide the destinies of the subdivision; the purchase price, improvements, etc., were to be paid, at stated intervals, out of the sales of the property, and, if necessary, sales of class "A" interests were to be made to assist the purchasers to carry out their part of the undertaking, which was to pay the sum of $315,000 to defendants Zieglar and

Carling; to improve the property; to protect and defend it from loss and damage; to pay all taxes or liens assessed against it; and to make sales of the subdivided property. The obligations of the beneficiaries were declared to be joint and several. Their beneficial interests were declared to be hypothecated for the purpose of securing performance of the terms of the declaration of trust. We may find it necessary hereafter to refer to some of the specific provisions, but for the present the general outline is sufficient.

The plaintiff in the two actions named in the caption hereof was not an original beneficiary, but acquired by assignment three-fifths of the class "B" beneficial interests during March, 1928, and another one-fifth August 29, 1928. During May, 1928, certain taxes on the property had become delinquent, and plaintiff instead of advancing them directly in his capacity as a beneficiary attempted to advance them as a payee through the defendant Zieglar, receiving from Zieglar an assignment *pro tanto* in the sum of the amount put up, to wit: $18,239.47. The first above-entitled action was commenced by Weidner to have it declared that the meaning of the assignment from Zieglar was that he assumed the position of a payee possessed of the rights of Zieglar until the advance was repaid to him and to enjoin a threatened sale of the beneficial interests by the trustee for defaults under the declaration of trust. Carling and Zieglar separately answered, denying that the plaintiff had advanced the money as a payee, and also jointly filed a cross-complaint in which they alleged that Weidner had accepted an assignment of a class "B" beneficial interest and had assumed the obligations of such beneficiary; that he had failed to make payments of principal and interest and taxes as required; that for the default thus occasioned they had caused a sale of the beneficial interests; and that after the proceeds therefrom had been deducted there remained due from plaintiff the sum of $117,940.26 and prayed for judgment accordingly.

In the second action the plaintiff sought to recover the sum advanced for taxes, upon the theory that at the sale of the beneficial interests by the trustee the sum of $150,000 was realized, out of which he claimed it was his right to be reimbursed.

The injunctive relief sought by plaintiff was, as is apparent from the facts already recited, denied. The two actions were consolidated. The court denied relief to the plaintiff in both actions and decided against the defendants and cross-complainants on their cross-complaint. From the judgment so entered the plaintiff has appealed as well as the cross-complainants.

It becomes apparent from what we have already said that the controlling question in this case is whether the plaintiff and appellant undertook and assumed the obligations of a class "B" beneficiary under the trust. We have heretofore stated the ultimate conclusion to the effect that the original class "B" beneficiaries personally agreed to discharge and pay the purchase price, taxes and improvements. There can be no doubt concerning that fact, but if there were, it would be set at rest by the decision of the District Court of Appeal in the case of *Davies* v. *Union Trust Co. of San Diego,* 125 Cal. App. 593 [13 Pac. (2d) 961], a case involving the identical trust here under consideration, wherein it was pointed out that although a "studious effort was made to avoid a clear covenant on the part of appellant and his associates to pay the indebtedness which is acknowledged to exist", yet there were express covenants to "protect the trust property from loss, damage, liability and expense" and to pay for improvements and to pay installments of the principal indebtedness, together with taxes or assessments against the property, which provisions, it was determined, were sufficient to support a deficiency judgment against one of the original class "B" beneficiaries. The declaration of trust provides as follows: "The terms and conditions hereof shall inure to and bind Trustee, all of said Beneficiaries and Payees, and all other heirs, legatees, devisees, executors, administrators, successors and assigns." It was executed by the trustee and ratified by the payees, the defendants and appellants Carling and Zieglar and the beneficiaries, in the language, a part of which, in view of the subsequent acceptance of assignment by Weidner, is significant, as follows: "We hereby jointly and severally assent, agree to, guarantee, warrant, approve, ratify and confirm said Declaration in all particulars." The plaintiff and appellant upon receiving the assignments already mentioned signed acceptances, each in the following

words: *"Assignee's Acceptance.* The undersigned assignee in the foregoing assignment, does hereby accept said Assignment and does hereby approve, warrant, confirm and agree to the Declaration of Trust referred to in said Assignment and all the terms and conditions thereof, hereby acknowledging that the same has been read by the undersigned.'' Two factors are to be noted in this acceptance. Weidner accepted the assignment and thereby became a class ''B'' beneficiary, subject to all the terms and conditions imposed upon his assignor. But this was not deemed sufficient to accomplish and express the intent of the parties. Something further was required. Hence, he agreed to, ratified, confirmed, approved and warranted all the terms and conditions of the declaration. Let us suppose that Weidner had been originally a beneficiary, but for some reason his signature to the original ratification had not been appended, i. e., he had not executed it. And indulging supposition further, let us contemplate the effect of his signature, upon discovery of the omission, in the exact words of the latter half of the acceptance. Can it be doubted that he had bound himself as effectually as though he had signed it in the first instance? We entertain no doubt upon the question, by which process of reasoning we also conclude that there was no doubt concerning the purpose and intent of the second half of the acceptance. By the first half Weidner was to become entitled to all the rights and privileges of a beneficiary and by the second half he assumed all of the burdens and responsibilities. This is made the more manifest by the provision already quoted, that the terms of the trust shall bind the assigns of the beneficiaries.

Considerable time and attention is devoted by counsel to the authorities dealing with the assumption of liability under a contract by an assignee thereof. There is nothing mysterious about the rule of law announced therein, nor is there any conflict in the cases when read in the light of that which governs, to wit: the intent of the parties, construed either by their acts, the subject matter of the contract or their words. It is conceded by counsel for defendants that the mere assignment of rights under an executory contract does not cast upon the assignee any of the personal liabilities imposed by the contract upon the assignor, for which proposition of law the books are full of authori-

ties. But they point out that, in harmony with section 1589, which reads: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting," there are a number of cases which declare an assumption by the assignee, such, for example, as *Cutting Packing Co.* v. *Packers' Exchange*, 86 Cal. 574 [25 Pac. 52, 21 Am. St. Rep. 63, 10 L. R. A. 369], *Jones* v. *Allert*, 161 Cal. 234 [118 Pac. 794], and *Robinson* v. *Rispin*, 33. Cal. App. 536 [165 Pac. 979]. And our attention is especially directed to *Brady* v. *Fowler*, 45 Cal. App. 592 [188 Pac. 320, 321], which case involved an option with a covenant by the optionee to pay taxes during the term thereof. It was assigned, and the court in an opinion written by Mr. Justice Richards said: "The written instrument which the court declared to constitute an option is set out in full in the plaintiff's complaint, and by its terms the obligations thereof are expressly made binding upon the successors and assigns of the parties thereto. No express assumption of those obligations by an assignee thereof, was, therefore, necessary. Moreover, as we have said, this appellant having enjoyed the rights arising from his making of the monthly payments therein provided, he cannot escape the burdens coincidently imposed during such period of enjoyment." In the case of *Barberich* v. *Pooshichian*, 59 Cal. App. 507 [211 Pac. 236], it was declared that as between the vendors and defendants who were the assignees of vendees, and who had undertaken and agreed "to keep, observe and comply with each and all of the terms and conditions in said contract contained" on the part of the original vendee there was a privity of contract which rendered the defendants liable under the contract. And in *Title Ins. etc. Co.* v. *Amalgamated Oil Co.*, 63 Cal. App. 29 [218 Pac. 71], the assignee of an oil lease who took " 'together with all rights and privileges, burdens and benefits in said lease set forth' " was declared to be "liable for the performance of all the obligations agreed to by the original lessee". Counsel for plaintiff and appellant lay considerable stress upon the case of *Armstrong Co.* v. *Shell Co.*, 98 Cal. App. 769 [277 Pac. 887], but an examination of the case discloses there was no obligation resting upon defendant's assignor to pay the

royalties sought to be recovered in the action. We might multiply considerably the authorities to the same effect as the first three discussed, but no useful purpose would be served. Our conclusion is that the plaintiff and appellant assumed the obligations of his assignors and is liable with the other sole remaining beneficiary for the indebtedness.

■ This conclusion practically disposes of the claims of plaintiff and appellant that he was entitled to recover the sum advanced by him for the payment of taxes. ■ Being under the obligation to pay the taxes it is obvious that the finding of the trial court to the effect that no consideration was given or received for the execution of the purported and limited assignment by defendant and appellant Zieglar is correct. (See *Sullivan* v. *Sullivan,* 99 Cal. 187. [33 Pac. 862] , *Marinovich* v. *Kilburn,* 153 Cal. 638 [96 Pac. 303], and *Shipley* v. *Rosemead Co.,* 100 Cal. App. 706 [280 Pac. 1017].) ■ It is also apparent that plaintiff's and appellant's claim that he was entitled to be reimbursed out of the sum realized from the sale of the beneficial interests pledged as security for the obligations which he had assumed is without merit.

It follows from what has been said that plaintiff was not entitled to recover, but that cross-complainants should have had judgment. The judgment in so far as it denies relief to plaintiff is affirmed, but that portion thereof which denies recovery to cross-complainants Frank B. Zieglar and Harry F. Carling is reversed.

Langdon, J., Preston, J., Curtis, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.