[Civ. No. 18354.   Second Dist., Div. Two.   Oct. 23, 1951.]

T. M. BERGIN, Respondent, v. BARNEY van der STEEN et al., Defendants; BEULAH ANDERSON et al., Appellants.

John W. Preston, Harry C. Cogen, Aaron L. Lincoff and Leo K. Gold for Appellants.

Birger Tinglof for Respondent.

MOORE, P. J.—Respondent recovered judgment for sums aggregating in excess of $54,800 as commissions on the gross dollar sales of liquors, foods and tobaccos at the Del Mar Turf Club. The appeal demands a reversal upon a number of grounds which will appear with the unfolding of the story.

On April 4, 1937, the club by a written instrument granted respondent a concession for the sale of such commodities at the Del Mar Race Track for the term of five years, ending with the racing season of 1941. By the same contract respondent was awarded an option for an additional period of five years from and after the close of the first five-year period. Immediately thereafter respondent assigned his concession agreement to Del Mar Caterers, a corporation of which he was sole shareholder. After operating the concession for

three years, the Caterers on April 24, 1940, assigned to appellant van der Steen and William L. Anderson as buyers, the original concession agreement. By such assignment the buyers agreed that no transfer of the concession would be made or any new agreement be substituted without written notice to the Caterers or without the execution and delivery to Caterers by the new concessionaire of his agreement to be bound by all the terms and conditions of the assignment. Neither should the buyers by a transfer of the concession be released from their obligations to the Caterers. As an integral part of the concession agreement, a supplemental contract was executed by the same parties whereby Caterers agreed that upon the expiration of the original term of the concession agreement at the close of the 1941 racing meet it would "not submit any bid to the club for the concession privileges during the optional five year term"; and the buyers agreed that in the event the concession is extended or renewed or "if any new or substituted concession agreement is entered into by us (the buyers), or either of us, or our assignees or by any firm or corporation in which we, or either of us, are interested, we agree to pay or cause to be paid, to you (Caterers) the equivalent of $2\frac{1}{2}$ per cent of the gross dollar sales made by the concession during the added period of five years commencing with the 1942 racing meet.

The concession was operated by the buyers during the 1940 racing season, but on April 9, 1941, prior to the commencement of the 1941 meet, Mr. Anderson deceased. His widow, appellant Beulah Anderson, qualified as executrix of his estate and acted in that capacity until June 2, 1944, when the probate proceedings were terminated. As surviving partner, van der Steen conducted the concession during the 1941 season and paid Caterers as provided by the 1940 contract; also he paid to Mrs. Anderson her decedent's share of the profits of 1941 for which she accounted to the estate.

After the close of the 1941 racing meet, neither respondent nor his corporation submitted a bid to the turf club for the concession privileges during the optional five-year term, nor did either make any effort to acquire any rights under the option, respondent having obligated himself by the supplemental contract of April 24, 1940, to refrain from bidding and having relied upon the assumption that the buyers would perform as they had agreed by such contract. But appellant Beulah Anderson obtained from the turf club a new concession agreement for the additional period of five years following

the expiration of the first five-year period. However, the turf club required, as conditions precedent to the effectiveness of the new concession to Mrs. Anderson, that the surviving partner and the executrix of decedent both should "waive and relinquish any and all options, rights and privileges granted the Concessionaire" under the agreement of April 4, 1937, between the turf club and respondent.[1] The court found that the new agreement of the club with Mrs. Anderson is a "new or substituted concession agreement" within the meaning of the supplemental agreement of April 24, 1940, and that it was so intended to be by both appellants; that by the waivers the latter signed on October 27, 1941, appellants "intended to, and did, transfer and assign unto, and vest in Beulah Anderson individually all optional concession rights and privileges" then and previously owned by the partnership . . . composed of Barney van der Steen and decedent; and that "by the execution of the referred to waivers and relinquishments . . . defendants intended to, and did, make Beulah Anderson an assignee and a new or substituted concessionaire" within the meaning of the supplemental agreement.

By respondent's agreement with turf club April 4, 1937, the Concessionaire was given a reasonable time after the expiration of the first five years within which to exercise the option of renewal. The court found that such reasonable time had not expired before the substituted agreement was made and that by the turf club's agreement of September 30, 1941, with Mrs. Anderson, the concession granted respondent in April, 1937, was extended and renewed within the meaning of respondent's agreement with the "buyers" on April 24, 1940.

---

[1]Exhibit 18: "The undersigned, as Executrix of the last Will and Testament of William L. Anderson, Deceased, does hereby waive and relinquish any and all options, rights and privileges granted the 'Concessionaire' under and by virtue of that certain agreement dated April 4, 1937, by and between Del Mar Turf Club and T. M. Bergin, and which rights and privileges vested in the said William L. Anderson by virtue of an assignment of said agreement of April 4, 1937.
"Dated Oct. 27, 1941.

Estate of William L. Anderson,
Deceased,
By Beulah Anderson, Executrix."

Exhibit 19. "The undersigned, as one of the assignees of T. M. Bergin, does hereby waive and relinquish any and all options, rights and privileges granted the 'Concessionaire' under and by virtue of that certain agreement dated April 4, 1937, by and between Del Mar Turf Club and the said T. M. Bergin.
"Dated Oct. 27, 1941.

Barney Van Der Steen"

Racing meets were forbidden by governmental regulations during 1942, 1943 and 1944. In July, 1945, in contemplation of the resumption of racing, Mrs. Anderson and the turf club executed another agreement whereby the parties stipulated that "the suspension of racing . . . as the result of wartime restrictions and regulations shall be understood to have merely suspended said Agreement of September 30, 1941, and the period of time during which said Agreement was inoperative . . . shall be deemed added to said contract and shall extend its term accordingly."

Immediately prior to the 1945 meet, without assigning her concession agreement, Mrs. Anderson pretended to sell the concession business to her two daughters and one Sam Dunham. Although the trio thereafter operated the concessions, from all the evidence the court found that there was no actual transfer of the concession rights and that title thereto was vested in Mrs. Anderson.

The court determined that appellant van der Steen was liable under the terms of the 1940 agreement to which he was a party. Mrs. Anderson's liability was based upon her implied assumption of the obligations imposed by that contract.

The first assignment of error is that the additional five-year option granted under the 1937 concession contract could not have been effectively transferred or assigned because the initial contract itself terminated prior to the exercise of the option. It is argued that the first five-year period ended on September 6, 1941, the final day of the 1941 racing season, and that consequently the new concession agreement between Mrs. Anderson and the turf club of September 30, 1941, came at least 24 days too late to be a valid exercise of the power to renew the contract. ██ In support of the general rule that an option contained in a contract must be exercised before the expiration of the original term or such power is extinguished, numerous authorities are cited. (*San Pedro Salt Co.* v. *Hauser Packing Co.*, 13 Cal.App. 1 [108 P. 728] ; *Robertson* v. *Drew*, 34 Cal.App. 143, 145 [166 P. 838] ; 3 Williston on Contracts [rev.ed.] § 853, p. 2391.) However, such general rule is not applicable where the parties have manifested an intention that the power is to continue for a reasonable time after the close of the original term of the contract. ██ It is elemental that a contract will be so interpreted as to ascertain the intention of the parties. ██ Such intent may be found from the circumstances of its execution, the conduct and declarations of the parties pursuant to its terms and the nature and custom

14

of the business concerned. (3 Williston on Contracts [rev.ed.] §§ 618-19, p. 1779.)  ██  A fair and reasonable interpretation is always preferred rather than one leading to harsh and unreasonable results.

██  Based upon substantial evidence, the court herein found that the parties to the initial concession agreement intended the concessionaire to have such reasonable time. The contract itself is indefinite on this point, stating merely that "Concessionaire is granted . . . an option for an additional period of five years from and after the close of the first five-year period. . . ." Nothing is stated therein to indicate time to be of the essence of the agreement. On the contrary, considering the nature of the enterprise and the surrounding facts and circumstances it is a reasonable interpretation that the parties contemplated a reasonable time within which the option could be exercised. It must be borne in mind that the brief season during each year when Del Mar was operated was itself uncertain. The time for the racing meet was annually set by the State Horse Racing Board. After the close of any racing meet the concessions are inoperative for approximately 10 months before reopening. Under such circumstances, is it likely that the parties considered "time of the essence" in exercising the option?

Additional evidence of the fact that the parties contemplated a reasonable period of time within which to act on the club's offer is supplied by their later conduct. For example, defendant van der Steen, on a check he sent to Bergin after the close of the 1941 meet, wrote on the accompanying voucher: "Happy to send you this check—you have an interest at Del Mar—why not help us to keep Hotel Del Mar open during the winter months—this will help your interest—in time to come. . . ." From that occurrence it is a reasonable inference that van der Steen apparently believed that the time had not yet expired for him to exercise the option and that Bergin would still be entitled to a share of gross sales under the 1940 contract. Furthermore, the act of the turf club in insisting upon waivers by van der Steen and Mr. Anderson's estate is likewise further evidence that the club considered the option right as still subsisting. If the officials of the club communicated to appellants the idea that the club could not grant a concession to Beulah Anderson by reason of the fact that an option to continue the concession granted to respondent in 1937 was still available to respondent's assignees, appellants' knowledge thus gained was basis sufficient to warrant

the inference that they both knew that they should exercise the option for renewal which would have entitled respondent to his share of the earnings for the additional five years. It is reasonable to infer from this act that the club did not consider it could grant a concession to Beulah Anderson since an option existed by which others could continue concession operations. It follows that the trial court's determination that appellants knew that they were holders of the option being based upon substantial evidence cannot be disturbed.

The second assignment urged by appellants is that the trial court erred in finding that the "waivers" of October 27, 1941, were actually an assignment to Beulah Anderson of all the optional concession rights granted in the 1937 contract, and that it was intended by appellants thereby to make her an assignee and a "new or substituted concessionaire" within the meaning of the 1940 agreement. Appellants argue that van der Steen as surviving partner could not create new partnership obligations; that to assign or exercise the five-year option would be inconsistent with his duties to wind up and settle the partnership business and therefore his waiver transferred nothing and was meaningless. The answer to such contention is that the power to exercise the option in the 1937 contract was an extremely valuable partnership asset; the profits realized by the concessionaires from their operations during the 1941 season alone totaled over $28,000. For such an asset van der Steen was in duty bound to account to Mrs. Anderson. Therefore, it was presumptively his intention, in whatever he did, to dispose of the asset in the regular course of the settlement of the partnership affairs.

Also, appellants contend that the waiver executed at the instance of the turf club cannot possibly be construed to be an assignment inasmuch as it does not purport to transfer any right from van der Steen and the estate to anyone. It is true that on the face of neither instrument does the conventional language of an assignment appear, but when the circumstances surrounding their execution are viewed in a realistic light it is apparent that by use of a "waiver and relinquishment" it was sought to assign valuable contractual rights to Mrs. Anderson disguised in an innocent terminology. Looking behind the trappings of the transaction, keeping in mind the advantages to be gained by appellants by obtaining a new contract without any obligation to pay respondent a portion of their profits and considering the benefits to be derived by the turf club in effecting its release from the terms of its

original concession, no doubt remains that the right to renew the valuable concession privileges was legally lodged in van der Steen with some equitable ownership in the beneficiaries of the estate of Mr. Anderson, and it is clear that the turf club recognized this fact and for an additional reason required the way to be cleared in order to grant new rights to the widow. The waivers were the means adopted for transferring to her these rights previously owned by the partnership. ██ As the trial judge pointedly observed, it is the substance and not the form of a transaction which determines whether an assignment was intended. ██ Appellant van der Steen cannot avoid his obligation under the 1940 contract with Del Mar Caterers to "pay or cause to be paid" 2½ per cent of gross sales for the five-year option period in the event of a renewal agreement by him or his assignees merely by a roundabout method which seeks to avoid calling the transaction an "assignment" or "transfer." It would be unreasonable to assume that van der Steen relinquished his interest in this valuable concession contract merely out of the goodness of his heart. Yet, that is the interpretation he would seem impliedly to urge upon this court since he failed to appear at the trial where he might have given his explanation under oath. From all of the circumstances the trial court's determination is entirely reasonable and in accord with lofty ethical concepts.

██ It is contended that, even assuming that the trial court was correct on other points, respondent is not entitled to recover for any years subsequent to 1946. They argue that this was the last year of the five-year term granted to Mrs. Anderson by the turf club contract and that the later agreement between them extending operations over the 1947-49 period cannot inure to respondent's benefit inasmuch as the original contractual obligations to him had been discharged. Unquestionably, the temporary frustration of the concessionaire occasioned by the war did not thereby discharge his duty to render performance for the balance of the five-year period which, after the war, included 1945 and 1946. ██ Where performance of a contract after a temporary suspension does not impose a substantially greater burden upon such promisor his duty is suspended only during the period his performance was hindered and he must thereafter perform. (*Autry* v. *Republic Productions, Inc.*, 30 Cal.2d 144, 149 [180 P.2d 888]; *United States Trading Corp.* v. *Newmark Grain Co.*, 56 Cal.App. 176, 187 [205 P. 29]; Rest. Contracts, § 462.)

The problem presented here is whether the period of the contract was ultimately extended beyond its normal termination date for an additional period equal to the period during which performance was suspended. Absent any agreement of the parties as to their intent, the rule would seem to be that no extension results. (Rest. Contracts, § 462, illustrations 3 and 5.) But the instant situation is not devoid of guidance. Mrs. Anderson's clarifying agreement of July, 1945, indicates that it was intended that any suspension of performance pursuant to the contract should also act to extend the overall period of the agreement. This subsequent contract specifically recites that "the parties hereto desire to clarify . . . said agreement of September 30, 1941 . . . " Thereby is an admission on her part that such was the meaning of the ambiguous clause in the original contract. Accordingly, the court's finding that it was intended that the contract should remain in existence for five racing meets is supported by the evidence.

However, this 1945 clarification was not admitted as evidence against van der Steen since he was in no way a party to it. The record is thus barren of any evidence binding him. Therefore, in the absence of a showing of a contrary intent it must be held that his liability terminated with the end of the 1946 meet.

Mrs. Anderson argues also that as to her the respondent's complaint fails to state a cause of action in that only legal conclusions are alleged. The complaint charges that defendants obtained the concession agreement pursuant to the provisions of paragraph 2(a) of the 1940 agreement which with the 1937 contract is incorporated in the pleading, and provides for the payment of 2½ per cent of the gross dollar sales which defendants have received ever since the 1942 racing season. The complaint further alleges that the defendants construed the phrase, to wit, "the term of five years, commencing with the 1937 season and ending with the season of the year 1941" to mean a term comprising a total of five racing-meet seasons and that the meets of 1942, 1943, and 1944 were held in the years 1945, 1946, and 1947.

Construed liberally in favor of plaintiff the complaint when read in conjunction with the incorporated exhibits alleges that appellant Anderson obtained, and still retained, the concession rights for the optional five-year period; that after having operated the concessions and collected the receipts she was a new or substituted concessionaire and assignee of

van der Steen and decedent Anderson and as such would pay plaintiff the 2½ per cent of gross sales. ▮▮▮ While the complaint may not be celebrated as a model declaration of ultimate facts yet, inasmuch as appellants are making their criticisms for the first time, an interpretation as favorable as possible will be given with a view to upholding the judgment. (21 Cal.Jur., Pleading, § 31, p. 55.)

▮▮▮ Mrs. Anderson demands reversal on the further ground that the record does not support the finding that she impliedly assumed the obligation under the 1940 contract to pay Bergin a percentage of gross proceeds from her concession operations. However, the record reveals that Mrs. Anderson had full knowledge of her husband's contract with Bergin; that she knew from her position as executrix of the great value of the concession agreement; that she thereafter received an assignment of the contract from van der Steen whereby she received the benefit of the valuable option for renewal and further gained the advantage of Bergin's fidelity to his promise to refrain from entering a competitive bid at the time for renewal. In pursuance of Civil Code, section 1589,[2] the court could correctly hold Mrs. Anderson impliedly to have assumed the obligations as well as expressly to have received the rights under the assigned contract. The California rule appears somewhat narrower than the provision of the Restatement of Contracts, section 164(2) that an assignee is held impliedly to undertake performance of the duties imposed by a contract merely by virtue of an assignment thereof. It is here held in conformance with section 1589, *supra*, that acceptance of the benefits of a transaction is equivalent to a consent to all the obligations thereby imposed. (*Weidner* v. *Zieglar*, 218 Cal. 345, 350 [23 P.2d 515]; *Brady* v. *Fowler*, 45 Cal.App. 592, 595 [188 P. 320].)

Moreover, the fact that no consideration was shown for the assignment from van der Steen to Beulah Anderson is also of significance. From this fact it is a reasonable inference that it was contemplated that the assignee would assume the obligations then resting upon the assignor. (See *Jegen* v. *Berger*, 77 Cal.App.2d 1, 6 [174 P.2d 489].)

▮▮▮ There is no merit in appellant Anderson's argument that respondent's claim is barred by the statute of frauds

---

[2] Section 1589, Civil Code. "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."

in that it comes within section 1624 (1) of the Civil Code, the one-year section.[3]  The answer to this contention is that Bergin has completely performed his promises under the 1940 contract, having assigned his rights under the original agreement and having thereafter refrained from bidding for concession privileges at the end of the 1941 season.  *Such agreement is thereby taken out of the operation of the statute.*  (*Dutton* v. *Interstate Inv. Corp.*, 19 Cal.2d 65, 70 [119 P.2d 138] ; Rest. Contracts, § 198.)

Neither can reversal be predicated upon the ground that respondent Bergin was under a legal disability to maintain this action as assignee of Del Mar Caterers because the formal assignment of July 28, 1948, was made when the corporation's rights, powers and privileges had been suspended for failure to pay its franchise taxes.  It is not necessary to consider the merits of this defense inasmuch as, pursuant to respondent's motion to reopen the case, additional evidence was introduced of a prior assignment to Bergin between April 24, 1940, and June of that year.  This evidence established that at a meeting of the corporation's board of directors held during that period all corporate assets were transferred to respondent in consideration of his relinquishment of his stock.

The last assignment made on behalf of appellant van der Steen is that he cannot properly be held liable under the 1940 contract since the evidence shows the concessions to have been sold to, and operated by, Dunham and others and not by Mrs. Anderson.  Without going into an interpretation of the contract between van der Steen and Del Mar Caterers to determine whether he was to be liable *only* in the event his immediate assignee were holder of the concession rights (a somewhat unreasonable construction) it is sufficient answer to appellant's contention to point out that the court below found that Mrs. Anderson did not part with all rights under her contract.  Respondent's testimony that Dunham informed him as late as 1947 that he only worked for Mrs. Anderson and that she was in charge supports the court's finding that she enjoyed full benefits of her contract, never having assigned such contract itself.  Indeed, her contract barred assignment without consent of the turf club.

---

[3]Section 1624, Civil Code.  "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent:

(1)  An agreement that by its terms is not to be performed within a year from the making thereof;"

The judgment in its entirety will be affirmed as to appellant Anderson but will be modified as to appellant van der Steen as follows: (1) Strike from the judgment to wit: "that plaintiff have and recover from defendants Barney van der Steen and Beulah Anderson and each of them the following sums of money" and also strike paragraphs (a) through (e), and substitute in lieu thereof the following, to wit: "that plaintiff have and recover from defendant Beulah Anderson the following sums of money:

"(a) The sum of $10,906.59, with interest thereon at 7% per annum from September 3, 1945;

"(b) The sum of $10,214.52, with interest thereon at 7% per annum from September 14, 1946;

"(c) The sum of $10,803.73, with interest thereon at 7% per annum from September 20, 1947;

"(d) The sum of $10,841.01, with interest thereon at 7% per annum from September 11, 1948;

"(e) The sum of $12,103.56, with interest thereon at 7% per annum from September 10, 1949;

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff have and recover from defendant Barney van der Steen the following sums of money:

"(a) The sum of $10,906.59, with interest thereon at 7% per annum from September 3, 1945;

"(b) The sum of $10,214.52, with interest thereon at 7% per annum from September 14, 1946; which said sums when paid shall constitute a payment on the sums to be paid by defendant Anderson."

As so modified the judgment is affirmed.

McComb, J., concurred.

The petitions for a rehearing were denied November 14, 1951, and appellants' petition for a hearing by the Supreme Court was denied December 18, 1951. Shenk, J., and Carter, J., voted for a hearing.