[Civ. No. 21697.   Second Dist., Div. Three.   Apr. 25, 1957.]

C. FANNING, Respondent, v. YOLAND PRODUCTIONS, INC., et al., Defendants; CARDINAL PICTURES, INC., Appellant.

Herbert T. Silverberg for Appellant.

Barry Brannen for Respondent.

WOOD (Parker), J.—Plaintiff is assignee of the rights of Ronald Colman to compensation under a motion picture contract. This is an action to recover $75,000, the balance of the amount guaranteed to be paid to him under the contract. In a nonjury trial, judgment was for plaintiff for said amount against defendants Yoland Productions, Inc., and Cardinal Pictures, Inc. Defendant Cardinal Pictures, Inc., appeals from the judgment.

On June 9, 1949, Yoland Productions, Inc., a motion picture producer, and Ronald Colman, an actor, entered into a written agreement whereby Colman agreed to render services as an actor for Yoland in the production of a motion picture, and whereby Yoland agreed (in paragraph "Third") to pay him for his services certain percentages of the gross proceeds from the picture, after $500,000 from the proceeds had been paid to the producer; provided (as stated in paragraph "Fourth") that "Notwithstanding the provisions of Paragraph Third . . . the Producer hereby guarantees" that Colman's share of such proceeds shall be not less than $100,000 to be paid as follows: $25,000 one week after starting the principal photography; and $75,000 out of the receipts of the picture "as a guaranteed minimum amount to be paid under the percentage terms specified in Paragraph Third," and that the $75,000 to be paid to Colman and charged against his percentages shall be paid to him not later than two years following the general release of the picture.

On July 15, 1949, Yoland assigned the Colman contract to Cardinal Pictures, Inc., a motion picture producer. Under the assignment Cardinal agreed to perform all the provisions of the Colman contract, "excepting Paragraph Fourth (b) which provides for a guarantee to Colman" of $75,000. The first paragraph of that assignment provided as follows: "We hereby assign to you our employment agreement with RONALD COLMAN dated June 9, 1949, and grant to you all our rights and benefits to and from his services and obligations thereunder to the same extent as though said agreement with said Colman had been made by you with him in the first instance in respect of said rights and benefits thereunder, ~~and you agree to assume our duties and obligations to said Colman thereunder.~~ HMP GM We agree to remain fully liable to said Colman under said agreement. However, with respect to all the provisions of said agreement, excepting Paragraph Fourth (b) which provides for a guarantee to Colman as therein recited, you agree to perform all of said remaining provisions of said agreement." The assignment also stated that Yoland had concurrently therewith sold and assigned to Cardinal the story and screenplay (upon which the picture was to be based); that after the picture was produced and the bank and other loans were paid, Cardinal would convey an undivided one-half interest in the picture to Yoland; and after all production expenses were paid, the producer's net profits

from distribution would be divided equally between Cardinal and Yoland.

Colman consented to the assignment and he fully performed his part of the contract. Cardinal completed the production of the picture in September, 1949, and it released the picture on April 27, 1950. Cardinal paid the $25,000 to Colman, as provided in the contract. The $75,000, balance of the guaranteed amount of $100,000, was not paid to Colman by Cardinal, Yoland, or at all. There was no evidence that Colman was entitled to receive any money as a percentage in excess of the $75,000. (Counsel for plaintiff stated at the trial that no evidence would be offered regarding a percentage in excess of the guaranteed amount (balance) of $75,000. It appears that the proceeds from the picture did not amount to $500,000, which was the amount to be received by the producer before a percentage of the proceeds (other than the $75,000) was to be paid to Colman.)

On October 13, 1952, Colman assigned to plaintiff Fanning all his rights to receive from Yoland and Cardinal amounts due or to become due under said agreement of June 9, 1949.

The present action to recover $75,000, balance of the guaranteed amount, was commenced October 24, 1952.

The court found, among other things: That Yoland orally advised Colman of the fact of the assignment of the contract of June 9, 1949, before Colman started to render services, but Colman was not shown the written assignment or advised by Yoland or Cardinal or anyone of any of the terms of the assignment until long after Colman had completed his services, and Colman rendered his services to Cardinal in the belief that Cardinal had assumed all of Yoland's obligations under said contract. That on August 18, 1949, Cardinal commenced the principal photography, and, while the contract of June 9 was still executory, Cardinal demanded of Colman and received from him the rendition of his services under the assigned contract. Pursuant thereto Colman commenced his services to Cardinal on August 18, 1949, and continued to perform his services and all the terms of said contract on his part to be performed until the completion of the picture on September 29, 1949. The picture was released about April 27, 1950, and since that time has been distributed throughout the world. During the week following the commencement of the photography, Cardinal paid Colman $25,000 pursuant to the contract of June 9, 1949. Since said payment of $25,000, neither Colman nor his assignee (plaintiff) has re-

ceived for Colman's services any other payment from Yoland or Cardinal, either on account of said percentages or said guarantee. The sum of $75,000 became due to Colman from Yoland and Cardinal, and each of them, on April 27, 1952, and said sum is due to plaintiff.

The court made conclusions of law, as follows: Cardinal as assignee of said employment contract accepted the burdens as well as the benefits thereof, and, by demanding and accepting said services of Colman and the full benefits thereof, became bound to pay Colman or his assignee the compensation stipulated in said employment contract. Cardinal, as assignee of said contract, and as recipient of the full benefits thereof, is estopped to set up as a defense to the claim of plaintiff the provisions of the agreement of June (July) 15, 1949, between Cardinal and Yoland, and particularly that portion thereof which purports to except from the obligations assumed by Cardinal the provisions of paragraph Fourth (b) of said employment contract of June 9, 1949.

Appellant (Cardinal) contends that under the uncontradicted facts and as a matter of law there was no liability on the part of Cardinal for the $75,000 guarantee. Its argument is that the evidence shows that neither Yoland nor Cardinal intended that Cardinal should be liable to Colman for the guarantee; and that since the assignment expressly provided that Cardinal should not assume the $75,000 guarantee, there was no liability on the part of Cardinal for the guarantee.

As above shown, the assignment did provide that Cardinal did not assume the guarantee, and that Yoland agreed to remain liable to Colman. ██ The general rule is that the mere assignment of rights under an executory contract does not cast upon the assignee any of the personal liabilities imposed by the contract upon the assignor. (*Armstrong Co.* v. *Shell Co. of Calif.,* 98 Cal.App. 769, 775 [277 P. 887]; *Weidner* v. *Zieglar,* 218 Cal. 345, 349 [23 P.2d 515].) An exception to the rule is based upon sections 1589 and 3521 of the Civil Code. Section 1589 provides: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." Section 3521 provides: "He who takes the benefit must bear the burden." In *Fruitvale Canning Co.* v. *Cotton,* 115 Cal.App.2d 622 [252 P.2d 953], it was said at page 626, that an exception to the rule "requires the assignee of an executory contract to accept the burdens when all the

benefits of a full performance have inured to him." It was also said in that case (p. 626) that the exception is stated in *Robinson* v. *Rispin*, 33 Cal.App. 536 [165 P. 979]. In the Robinson case it was said at page 541 : "Of course, as suggested by respondent, the mere assignment of the rights under an executory contract would not make the assignee liable to the other contracting party. . . . But where, after the assignment is made, the executory provisions of the contract are fully performed, the benefit inuring solely to the assignee, and where by his actions he holds himself out as personally liable and recognizes the original contract as binding upon him, he is liable to the other party equally with the assignor." It may be stated generally that the facts in the Robinson case were: Robinson and Rispin entered into a written agreement for the drilling of oil wells. Robinson agreed to furnish the tools and labor, and to drill the wells. Rispin agreed to pay a certain amount for each foot drilled, and to furnish the casing. Before Robinson began the drilling, Rispin assigned all his interest in the drilling agreement to a corporation. The trial court therein found that the corporation accepted the assignment, benefits and obligations arising from the agreement with Robinson, with full knowledge of all the facts, and that the work thereafter proceeded under the corporation's directions and instructions. After Robinson had drilled a well to a depth of 400 feet, the corporation and Robinson mutually agreed that it should be abandoned as an oil well and converted into a water well. Robinson was paid $1,800 for drilling that well. When he had drilled another well to a depth of 907 feet, the corporation (and Rispin) failed to furnish the casing, and thereupon Robinson ceased drilling. Thereafter Robinson sued the corporation and Rispin for the amount due for drilling and for damages for breach of contract. Judgment therein was for plaintiff against both defendants. On appeal therein, one of the contentions of the defendant corporation (the assignee) was that it did not assume any liability under the contract made by Robinson and Rispin. The court said at page 541 : "There can be no doubt, however, that the record supports the finding of the court to the effect that Rispin transferred, set over, and assigned all his right, title, and interest, under the assignment made by him with Robinson, to the defendant corporation, this transfer having been made . . . while the contract was wholly executory; that defendant corporation voluntarily accepted the assignment and the benefits and

obligations arising from the transaction and agreement with Robinson, with full knowledge of all the facts relating thereto, and thereafter requested Robinson to perform the work stipulated under and pursuant to the terms of that agreement.'' The judgment therein was affirmed as to corporation; but was reversed as to Rispin (apparently for the reason that he was denied an opportunity at trial to prove an alleged novation).

In *Pecarovich* v. *Becker*, 113 Cal.App.2d 309 [248 P.2d 123], plaintiff Pecarovich, who was a football coach, entered into a contract with Becker, who was owner of a professional football team, whereby Pecarovich agreed to coach Becker's team. Becker assigned to Dardi a one-half interest in Becker's football franchise and in the contracts and assets of the football club. Pecarovich continued to coach the team after the assignment to Dardi. Pecarovich sued Becker and Dardi for his salary. Dardi (the assignee) appealed from a judgment in favor of plaintiff, and he contended that he had not assumed any liability under the Becker-Pecarovich contract. On appeal, the court said at page 315: ''The evidence by conduct also shows that appellant [Dardi] received the benefits of the Becker-Pecarovich contract, the services of respondent in coaching the team. That brings into play section 1589 of the Civil Code: 'A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.' Section 3521 of the same code is of similar import: 'He who takes the benefit must bear the burden.' (See *Jegen* v. *Berger*, 77 Cal.App.2d 1 [174 P.2d 489], for a discussion of these several principles of law; and *Bergin* v. *van der Steen*, 107 Cal.App.2d 8, 18 [236 P.2d 613], and *Walmsley* v. *Holcomb*, 61 Cal.App.2d 578, 582 [143 P.2d 298], concerning the significance of sections 1589 and 3521 of the Civil Code.)''

In the present case the assignment agreement stated, as above shown, that Yoland assigned the Colman employment agreement to Cardinal and granted to Cardinal all of Yoland's rights and benefits to and for Colman's services and obligations under the agreement to the same extent as though the agreement had been made with Cardinal in the first instance in respect to the rights and benefits thereunder. Pursuant to the terms of the Yoland-Colman contract, and the terms of the assignment thereof, Cardinal made the picture and used the services of Colman in making it. Cardinal gave

directions to Colman with reference to the performance of his services, and held itself out as his employer. Colman fully performed his part of the employment contract. The negative of the picture was owned by Cardinal (subject to the provision in the assignment that after loans were paid a one-half interest therein would be conveyed to Yoland). It thus appears that Cardinal accepted the benefits of the services of Colman under the Yoland-Colman contract. Approximately one week after starting the principal photography, Cardinal paid $25,000 to Colman as provided in the Yoland-Colman contract. The assignment of the contract did provide that Cardinal would perform all the provisions of the Yoland-Colman contract, except the provision regarding the guarantee of payment to Colman. The court found, upon substantial evidence, that the assignment was not shown to Colman and no one advised him of any of the terms of the assignment until long after he had completed his services; and that Colman rendered his services in the belief that Cardinal had assumed all of Yoland's obligations under the Yoland-Colman contract. It was stipulated at the trial that if Colman were called as a witness he would testify that he was not advised as to any of the specific terms of the assignment until approximately a month before this action was filed. (The action was filed about three years after the services were rendered.) Colman was not required to consent to the assignment. If he had been advised that Cardinal and Yoland had inserted a provision in the assignment that Cardinal would not perform the guarantee provision of the employment contract, it is reasonable to conclude that Colman would not have rendered his services for Cardinal. There is no reason to assume that Colman would have rendered his services for Cardinal under a financial arrangement that was less favorable to himself. It is apparent that Colman rendered his services for the consideration stated in his employment contract. The agreement between Cardinal and Yoland, which was not disclosed to Colman, to the effect that Cardinal did not assume the payment of the $75,000 guarantee was not binding upon Colman. Cardinal accepted the benefits of Colman's services which were rendered under the provisions of his employment agreement with Yoland. Under the provisions of section 1589 of the Civil Code, the acceptance by Cardinal of such benefits, under the circumstances here, is "equivalent to a consent to all the obligations arising from" the employment contract between Colman and Yoland.

Also under the provisions of section 3521 of the Civil Code, since Cardinal accepted such benefits from the employment contract, it must also bear the burdens of that contract. Notwithstanding the private arrangement between Cardinal and Yoland with respect to the nonliability of Cardinal for the guarantee, Cardinal is liable, under the circumstances here, for the $75,000 guarantee stated in the Yoland-Colman employment contract. The liability of Cardinal, under the circumstances here, is based upon principles of estoppel.

Appellant (Cardinal) also contends in effect that the judgment is erroneous for the reason that Colman did not plead estoppel. Colman's complaint alleged that Cardinal had agreed to be bound by all obligations undertaken by Yoland in the Yoland-Colman contract. Cardinal pleaded, in its answer, to the effect that it did not assume the guarantee provisions of the employment contract, but expressly agreed with Yoland by said assignment that Cardinal should not be obligated to perform the provision of the employment agreement regarding the guarantee. The answer presented the issue as to whether Colman was bound by the provision in the assignment which purported to eliminate liability on the part of Cardinal for the guarantee. ■ ''While ordinarily estoppel must be pleaded this is subject to the settled exception that where it is relied upon by a plaintiff to meet new matter affirmatively pleaded in the answer the provisions of section 462, Code of Civil Procedure, take the place of a replication at common law and permit the introduction of evidence of estoppel to meet the new matter pleaded in the answer.'' (*Wilson* v. *Grey,* 49 Cal.App.2d 228, 230 [121 P.2d 514]; see *Hedlund* v. *Sutter Medical Service Co.,* 51 Cal.App.2d 327, 332 [124 P.2d 878]; see *General Motors Acceptance Corp.* v. *Gandy,* 200 Cal. 284, 294 [253 P. 137].) ■ Evidence was admissible with reference to whether Cardinal was estopped to rely upon its alleged special defense. At the oral argument on appeal, counsel for Cardinal asserted in effect that at the trial he expected Colman to prove his allegations that Cardinal agreed to be bound by all the obligations of Yoland, and that Colman consented to the assignment upon the express agreement of Cardinal that it became bound by Yoland's contract; and he asserted that he was not expecting that there would be reliance by Colman upon an alleged estoppel. He argued further that Cardinal was prejudiced by Colman's failure to plead estoppel, in that, if estoppel had been pleaded he would have had an opportunity to take

Colman's deposition. The reporter's transcript shows, on page 27, that counsel for plaintiff said: "[I]t is a legal question as to whether or not the terms of the contract on which they are bound are an express contract. Actually, on the theory of this case it's perfectly true; they [Cardinal] are bound upon this contract, and they're estopped from setting up anything to the contrary." The trial proceeded thereafter for approximately two hours and then was continued in order to give the attorneys an opportunity to file briefs. About nine weeks later the trial was resumed. Another continuance was ordered, and about four weeks later the trial was resumed. It thus appears that the issue of estoppel was referred to in the early part of the trial, but it does not appear that, during the extended proceeding, counsel for Cardinal requested a continuance in order to take Colman's deposition. The contention to the effect that Cardinal was prejudiced in not having an opportunity to take Colman's deposition is not sustainable.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied May 16, 1957, and appellant's petition for a hearing by the Supreme Court was denied June 19, 1957.