Filed 7/29/16  Kaniu v. EMC Mortgage Corp. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| SAM KANIU et al., | C079248 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV0034705) |
| v. | |
| EMC MORTGAGE CORPORATION et al., | |
| Defendants and Respondents. | |

In this action, plaintiffs Sam Kaniu and Margaret Karanja (plaintiffs) sued EMC Mortgage Corporation,[1] JP Morgan Chase Bank, N.A., and California Reconveyance Company for the consequences of a failed home loan mortgage modification process. The trial court sustained defendants' demurrer without leave to amend.  On appeal, we

---

[1]  Defendant EMC Mortgage LLC notes it was incorrectly sued as EMC Mortgage Corporation.

1

conclude the court erred in sustaining the demurrer as to some of the causes of action. Accordingly, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2006, plaintiffs took out a mortgage on their family home on Littoral Street in Roseville for $598,000. From December 2006 until December 2008, they made all the monthly mortgage payments.

In January 2009, plaintiffs began having financial hardships due to the reduction in pay from the State of California employee furloughs.

In February 2009, plaintiffs called EMC Mortgage Corporation to ask about temporary alternatives to making their full monthly mortgage payment. An authorized agent of EMC Mortgage Corporation told them to apply for a permanent loan modification and that to receive the permanent modification or to receive any assistance, plaintiffs "would need to discontinue making their monthly mortgage payments."

In March 2009, authorized agent of EMC Mortgage Corporation Shannon Newkirk told plaintiffs "their Loan modification was forthcoming, and [EMC Mortgage Corporation] was going to put plaintiffs on a trial modification" plan. Plaintiffs were indeed put on a trial period plan that required three monthly payments of $2,544.39 in May, June, and July 2009 and stated " '[i]f I am in compliance with this [trial period plan] . . . then the Lender will provide me with a Home Affordable Modification Agreement.' " Plaintiffs made all three payments.

When plaintiffs contacted EMC Mortgage Corporation and asked when they would receive the permanent loan modification, Newkirk told them to "continue[] paying the $2,544.39." Plaintiffs did so through February 2010. Plaintiffs stopped making the payments in February 2010 because an EMC Mortgage Corporation agent who identified herself only as "Karen" told them to do so, because then they could receive a different loan modification with better terms.

2

In early March 2010, plaintiffs received a letter from EMC Mortgage Corporation that their home affordable modification agreement had been denied. After receiving this letter, plaintiffs called EMC Mortgage Corporation and spoke with an agent who identified herself only as "Anna." At that time, Anna said the new interest rate on the permanent loan modification would be 8.49 percent, plaintiffs' new monthly payment would be $5,859.09, plaintiffs should "stop making their monthly trial period payments because it was a waste of money and that EMC just plays games and would deny [their] loan modification anyway."

Also in March 2010, plaintiffs had additional phone conversations with agents at EMC Mortgage Corporation. An unnamed agent told them to "apply for another Loan modification and . . . confirmed that EMC now had all the paperwork requested and required." In another conversation, Anna "promised . . . that she was going to get Plaintiffs the correct permanent loan modification as Plaintiffs had continued making their monthly payments long beyond the trial plan period."

In June 2010, plaintiffs had a phone conversation with EMC Mortgage Corporation agent Stephanie Moss who said "since Plaintiffs were awaiting the proper permanent loan modification, . . . EMC would not initiate foreclosure proceedings against the Subject property and [their] credit was not going to be damaged."

In March 2011, EMC Mortgage Corporation transferred plaintiffs' account to JP Morgan Chase Bank, N.A. That month, plaintiffs spoke to Anna from EMC Mortgage Corporation, who "confirmed that all of Plaintiffs' documents had been transferred to . . . Chase and that Plaintiffs would receive the proper promised permanent loan modification."

JP Morgan Chase Bank, N.A., then told plaintiffs, "they were not going to give Plaintiffs the promised permanent loan modification."

In June 2012, plaintiffs met with Brian A. Messier, a "Chase Authorized Agent with the Chase Mortgage Assistance Program" in Sacramento. At the meeting, Messier

3

reviewed all of plaintiffs' loan modification applications and supporting documentation and confirmed with his counterpart at the branch that Chase had all the required documentation needed to support plaintiffs' loan modification application.  Messier told plaintiffs, "there was no need to worry, as Plaintiffs would obtain their proper promised permanent loan modification."

Thereafter,  plaintiffs followed up with JP Morgan Chase Bank, N.A.  Each telephone conversation with its authorized representatives was the same:  "all the documentation was received and Plaintiffs would be provided with the correct promised permanent loan modification."

In September 2012, JP Morgan Chase Bank, N.A., denied their loan modification, and plaintiffs applied for a short sale.

In March 2013, the short sale was approved by letter dated March 19, 2013.  "Plaintiffs are no longer in possession of this short sale approval [letter]."  Although JP Morgan Chase Bank, N.A.'s authorized representative Renee Baxter said Chase received all the required short sale documentation, Chase released plaintiffs' loan to Select Portfolio Servicing, Inc.

In June 2014, plaintiffs commenced this action by filing a complaint for damages and injunctive relief (to prevent the property from being sold) against defendants.  The gist of their complaint was they were "victims of a fraudulent loan modification process that . . . left [them] facing a wrongful foreclosure.  [They] were strung along with the promises of a permanent loan modification, paid the requisite Trial Plan payments . . . .  [The] correct permanent modification . . . never occurred[.]  [They] were then placed in foreclosure after an insurmountable default had been created through this modification process."  The operative complaint alleged the following six causes of action:  (1) breach of contract for the loan modification against EMC Mortgage Corporation; (2) breach of contract for the short sale agreement against JP Morgan Chase Bank, N.A.;
(3) promissory estoppel against all defendants; (4) wrongful foreclosure against all

4

defendants; (5) fraud against EMC Mortgage Corporation; and (6) unlawful, unfair and/or fraudulent business practices under Business and Professions Code section 17200 (unfair competition) against all defendants. Defendants demurred to the operative complaint.

The trial court sustained the demurrer without leave to amend on the following grounds: (1) the breach of contract claim against EMC Mortgage Corporation was barred by the statute of limitations because plaintiffs knew in March 2010 that EMC Mortgage Corporation had denied the loan modification and they sued in June 2104, which was four years after the breach; (2) the breach of contract claim for the short sale agreement against JP Morgan Chase Bank, N.A., failed to state a claim because plaintiffs did not attach a copy of the contract or set forth its terms verbatim; (3) the promissory estoppel claim against all defendants failed because plaintiffs did not allege a promise that was clear and unambiguous; (4) the wrongful foreclosure claim against all defendants failed because plaintiffs admitted they stopped making payments on the loan, which would constitute an actionable breach of their obligations under the note; (5) the fraud claim against EMC Mortgage Corporation failed because plaintiffs alleged several conflicting misrepresentations and did not make clear which ones they relied on and they failed to allege justifiable reliance; and (6) the unfair competition claim against all defendants failed because it was based on the earlier claims of breach of contract and fraud, none of which were adequately alleged. The trial court then entered a judgment of dismissal, from which plaintiffs have appealed.

DISCUSSION

I

*Standard Of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the

5

truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

Using this standard, we turn to the six causes of actions that plaintiffs claim were properly pled.

## II

### *Breach Of Contract Claim Against EMC Mortgage Corporation*
### *(First Cause Of Action)*

The trial court concluded that plaintiffs failed to state a cause of action for breach of contract for the loan modification because the statute of limitations had run, as plaintiffs knew in March 2010 that EMC Mortgage Corporation had denied the loan modification and they sued in June 2104, which was more than four years after the breach. (See *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1148 ["The ordinary statute of limitations for breach of a written contract is four years. (Code Civ. Proc., § 337)"].)

On appeal, plaintiffs claim the court erred because the breach occurred not in March 2010 when EMC Mortgage Corporation denied the loan modification, but rather in September 2012 because of the "continued misrepresentations regarding a corrected permanent loan modification." (Italics omitted.) Defendants respond, among other things, that this breach of contract claim fails for lack of consideration. Defendants are correct.

" ' [A] contract . . . requires consideration.' " (*Estate of Howe* (1948) 31 Cal.2d 395, 398.) Consideration is "[a]ny benefit conferred, or agreed to be conferred, upon the

promisor . . . to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." (Civ. Code, § 1605.) Here, plaintiffs' payments under the trial payment plan did not constitute consideration because plaintiffs were already obligated to make even greater payments under the note and deed of trust. "A statutory or legal obligation to perform an act may not constitute consideration for a contract." (*O'Byrne v. Santa Monica-UCLA Medical Center* (2001) 94 Cal.App.4th 797, 808; see also *Grant v. The Aerodraulics Co.* (1949) 91 Cal.App.2d 68, 75 [" 'It is an uniform rule of law that a consideration for an agreement is not adequate when it is a mere promise to perform that which the promisor is already legally bound to do' "].)

## III

*Breach Of Contract Claim Against JP Morgan Chase Bank, N.A.*

*(Second Cause Of Action)*

The trial court concluded that plaintiffs failed to state a claim for breach of contract for the short sale agreement against JP Morgan Chase Bank, N.A., because plaintiffs did not attach a copy of the contact or set forth its terms verbatim.

On appeal, plaintiffs contend the court erred because they "clearly alleged that there was an Agreement, that the approval letter of March 19, 2013 is no longer in their possession and such was breached by Defendants." As they are "no longer in possession of the documents, they were unable to plead the exact terms of the agreement in their Operative . . . Complaint. However, . . . Chase is in possession of the agreement and such should be readily available in discovery."

The trial court was correct. "The purpose of a pleading is to inform the opposite party of the facts on which the pleader will rely as constituting his action or defense." (*Santa Rosa Bank v. Paxton* (1906) 149 Cal. 195, 197, 198.) "The rule that a written instrument upon which a cause of action is founded may be pleaded either by setting

7

forth its substance according to its legal effect, or by incorporating a copy in the body of the complaint, or by attaching thereto, by a proper reference, a copy of such instrument, as the pleader may choose, is thoroughly established in this state." (*Ibid*.)

In the operative complaint, plaintiffs pled that "[i]n September of 2012, Plaintiffs were denied the loan modification and applied for a short sale. The short sale approval was received by letter dated March 19, 2013. Plaintiffs are no longer in possession of this short sale approval." These allegations do not contain any of terms of the short sale agreement, for example, for how much was the sale to be for or a minimum price for the short sale. Without any terms of the short sale agreement, plaintiffs have failed to inform defendants of the facts they are relying on in this cause of action. Furthermore, plaintiffs offer no authority (and we cannot find any) that their allegation that the short sale agreement is in the possession of defendants and its availability during discovery should absolve them of the requirement that they plead the essential terms of the contract at this stage of the litigation. As such, the trial court was correct in ruling that this cause of action failed because plaintiffs did not attach the short sale agreement or plead the terms of the contract. (*Santa Rosa Bank v. Paxton*, *supra*, 149 Cal. at p. 198.)

IV

*Promissory Estoppel Claim Against All Defendants*

*(Third Cause Of Action)*

The trial court concluded that the promissory estoppel claim against all defendants failed because plaintiffs did not allege a promise that was clear and unambiguous.

On appeal, plaintiffs contend the trial court erred because "[b]ased upon the trial plan agreement, there is the existence of, at least for purposes of allegations in an Amended Complaint, facts sufficient to claim a cause of action for promissory estoppel." They point to the "trial plan agreement from [EMC Mortgage Corporation] that states that if Plaintiffs . . . pay the three (3) trial plan payments then their loan would be permanently modified." "Although Plaintiffs . . . adhered to the terms of the trial plan

8

agreement, [EMC Mortgage Corporation] denied their permanent loan modification." Plaintiffs are correct.

"In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.' [Citations.] Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.)

"The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.' " (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901.)

In March 2009, authorized agent of EMC Mortgage Corporation Shannon Newkirk told plaintiffs, "their loan modification was forthcoming, and [EMC Mortgage Corporation] was going to put Plaintiffs on a trial modification" plan. Plaintiffs were indeed put on a trial modification plan that required three monthly payments of $2,544.39 in May, June, and July 2009 and stated " '[i]f I am in compliance with this [trial modification plan] . . . then the Lender will provide me with a Home Affordable Modification Agreement.' " Plaintiffs made all three payments. The terms of the promise here were clear and unambiguous: EMC Mortgage Corporation through its agent Shannon Newkirk in March 2009 told plaintiffs that EMC was going to put them on a trial modification plan, the terms of that plan were that plaintiffs were to pay three monthly payments of $2,544.39 in May, June, and July 2009, and then the lender would

9

provide plaintiffs with a home affordable modification agreement.  Contrary to defendants' position on appeal, this promise did not involve an "unspecified individual" (it involved Newkirk) agreeing to some "broad generalizations" (it required plaintiffs to make three payments at three specific times in return for a permanent loan modification agreement).

Notwithstanding these terms, defendants next allege plaintiffs failed to plead reasonable and foreseeable reliance on this promise.  But they did.  They "relied on Defendants' promises by foregoing alternative financing available to them to satisfy the Subject Loan."  While defendants claim this was only a conclusory allegations about " 'the possibility of failing to explore the possibility of refinancing,' " plaintiffs alleged that they actually gave up alternative financing that was available to them, not the possibility of such financing.

Finally, defendants contend that plaintiffs' "damages are equally unclear," because their damages are "the direct result of [their] default and their failure to satisfy their obligations under the Loan."  Not so.  Defendants specifically alleged that their damages here, "substantial arrears and fees," were "due to Defendants wrongfully failing to offer the correct and accurate permanent modification," to which they would not have been subject if they had pursued the alternative financing available to them.

Based on these allegations, the court erred in sustaining defendants' demurrer to the promissory estoppel cause of action.

V

*Wrongful Foreclosure Claim Against All Defendants*

*(Fourth Cause Of Action)*

The trial court concluded that the wrongful foreclosure claim against all defendants failed because plaintiffs admitted they stopped making payments on the loan, which would constitute an actionable breach of their obligations under the note.  Similar to the trial court's conclusion, defendants argue they had the "legal right to initiate

10

foreclosure proceedings" because the deed of trust here contained a power of sale in case of plaintiffs' failure to comply with the terms of the original loan.

On appeal, plaintiffs contend the trial court erred (and defendants are wrong) because they "were not in breach of their obligations under the permanent modification of the Note. [They] fully accepted the permanent loan modification Agreement as instructed by making the Trial Plan Payments. As such, [they] fulfilled their obligations to Defendants . . . as instructed." They are correct.

The elements of a wrongful foreclosure cause of action are: " ' "(1) [T]he trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." ' " (*Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 561-562.)

Here, the trial court and defendants are wrong that defendants had the right to foreclose on the property because plaintiffs' claim is that the foreclosure was wrongful because defendants *had given up the right to foreclose on plaintiffs' home on the original note*, as they all had entered into an agreement for permanent loan modification under which plaintiffs had already made the three required trial plan payments. As such, they "fulfilled their obligations to Defendants . . . as instructed."

Notwithstanding this point, defendants persist that the wrongful foreclosure claim still fails because plaintiffs did not allege tender. The general rule is that "[a] full tender must be made to set aside a foreclosure sale." (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526, italics omitted.) "The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]." (*FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1022.) There is an

11

exception to the general tender rule when it would be inequitable to require tender. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 113; *Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1372-1374.)

Here, the exception to the tender rule applies. The purpose of a home loan modification "is to avoid a foreclosure despite the borrower being incapable of complying with the terms of the original loan. It would be contradictory to require the borrower to tender the amount due on the original loan in such circumstances. Moreover, the purpose of the tender rule is to dismiss suits at an early stage, where, despite any irregularities in the lender's foreclosure activities, the borrower will ultimately have to pay the amount due on the loan, but cannot do so. Such suits are essentially futile. This is not such a case, as a loan modification is an alternative to foreclosure that does not require the borrower to pay pursuant to the terms of the original loan. Accordingly, the tender rule does not apply." (*Majd v. Bank of America, N.A.* (2015) 243 Cal.App.4th 1293, 1306.)

Finally, defendants argue that plaintiffs failed to allege prejudice as a result of any imperfection in the foreclosure process. Not so. Plaintiffs alleged prejudice, including that they gave up alternative financing available to them and that they incurred "arrears and fees that accrued" due to not being offered the permanent loan modification.

Based on plaintiffs' allegations, the court erred in sustaining defendants' demurrer to the wrongful foreclosure cause of action.

VI

*Fraud Claim Against EMC Mortgage Corporation*

*(Fifth Cause Of Action)*

The elements of a fraud claim based on a false promise are: (1) a promise by the defendant (2) made without an intent to perform and (3) made with the intent to induce reliance by the plaintiff, followed by (4) reasonable reliance by the plaintiff that results in (5) injury to the plaintiff. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) The

12

trial court concluded the fraud claim against EMC Mortgage Corporation failed because plaintiffs alleged several conflicting misrepresentations and did not make clear which ones they relied on and they failed to allege justifiable reliance.

On appeal, plaintiffs contend the court erred because they did plead the specific false statements on which they justifiably relied. Namely, defendants "misrepresented to [them] that they qualified for and would receive permanent loan modifications" but then "led [them] through a lengthy process that resulted in a default against the Property that was engineered by the fraudulent actions of Defendants."

The false statements pled by plaintiffs that support this contention of a promised permanent loan modification are the following: In March 2009, agent Shannon Newkirk of EMC Mortgage Corporation told plaintiffs, "*their Loan modification was forthcoming*, and [EMC Mortgage Corporation] was going to put Plaintiffs on a trial modification" plan, and to "continue[] paying the $2,544.39." (Italics added.) In March 2010, Anna "*promised . . . that she was going to get Plaintiffs the correct permanent loan modification* as Plaintiffs had continued making their monthly payments long beyond the trial plan period." (Italics added.) In June 2010, plaintiffs had a phone conversation with EMC Mortgage Corporation agent Stephanie Moss, who said, "since Plaintiffs were awaiting the proper permanent loan modification, . . . EMC would not initiate foreclosure proceedings against the Subject property and [their] credit was not going to be damaged." In March 2011, when plaintiffs' account had been transferred to JP Morgan Chase Bank, N.A., Anna from EMC Mortgage Corporation "confirmed that all of Plaintiffs' documents had been transferred to . . . Chase and that *Plaintiffs would receive the proper promised permanent loan modification*." (Italics added.)

Despite these specific and repeated promises of a permanent loan modification, defendants contend plaintiffs' reliance was not justified and they were not damaged. Not so. Plaintiffs have pled justified reliance on these promises because they "fore[went] alternative financing available to them to satisfy the . . . loan." Plaintiffs also pled

13

damages in that they "are facing a Trustee sale of their family home," their credit has been destroyed, and they have lost money, including "overcharges of fees," "attorneys' fees," and "costs of saving the Property."

Finally, defendants claim that notwithstanding all of this, plaintiffs' fraud claim is barred by the statute of limitation, which is three years. (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437.) They allege that the false misrepresentations occurred in February, March, and June of 2010, so plaintiffs had until 2013 to file the lawsuit, but they waited until 2014, which was too late. Defendants' argument misses the mark because it accounts only for one element of the fraud cause of action -- misrepresentation. But what arguably made these misrepresentations fraud also included, among other things, the injury. (See *Zamora v. Shell Oil Co.* (1997) 55 Cal.App.4th 204, 210 [" 'In California, no cause of action accrues--i.e., the statute of limitations does not commence-- until all elements of the cause of action, including that of damage or injury, have occurred' "].) The injury did not occur here until September 2012 when their loan modification was finally denied. It was then the statute of limitations began to run. Plaintiffs' original complaint, filed in June 2014, was within the three-year statute of limitations.

Based on the foregoing, the court erred in sustaining defendants' demurrer to the fraud cause of action.

VII

*Unfair Competition Claim Against All Defendants*

*(Sixth Cause Of Action)*

The trial court ruled that plaintiffs' unfair competition claim against all defendants failed because it was based on the other claims of breach of contract and fraud, none of which were adequately alleged. But, as we have ruled, the trial court erred in sustaining defendants' demurrer as to the fraud cause of action. That then leads to the question

14

whether plaintiffs' allegations of fraud were sufficient to sustain a cause of action for unfair competition. They were.

"The purpose of the UCL [unfair competition law] 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. [Citation.]' [Citations.] The UCL 'defines "unfair competition" to mean and include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law ([Bus. & Prof. Code,] § 17500 et seq.)]." [Citation.]' [Citation.] Whether a plaintiff has standing to sue under the UCL and whether an alleged business practice violated the UCL both may be resolved at the demurrer stage in appropriate cases." (*Drum v. San Fernando Valley Bar Assn.* (2010) 182 Cal.App.4th 247, 252.)

Defendants on appeal claim plaintiffs lack standing because they did not suffer loss of money or property because they "still hold title to the Property and any payments they made on the Loan they were already obligated to make." But plaintiffs alleged that they lost money from defendants' fraud in the form of "overcharges of fees," "attorneys' fees," and "costs of saving the Property."

Defendants persist that their failure to modify plaintiffs' loan cannot constitute an unfair business practice because they were under no legal requirement to modify the loan. This argument misses the mark. The gist of plaintiffs' unfair competition claim based on fraud is that defendants engaged in the fraudulent business practice of telling people such as plaintiffs that they would qualify for permanent home loan modifications, that to do so they needed to pay the trial period plan payments for a number of months, and after they made such payments, defendants continued to string them along with the false promise of permanent home loan modification.

Based on the foregoing, the court erred in sustaining defendants' demurrer to the unfair competition claim.

15

DISPOSITION

The judgment of dismissal is reversed, and the case is remanded to the trial court with instructions to vacate its order sustaining the demurrer in its entirety without leave to amend and to enter a new order:  (1) sustaining the demurrer to the causes of action for breach of contract against EMC Mortgage Corporation and breach of contract against JP Morgan Chase Bank, N.A., without leave to amend; (2) overruling the demurrer to the causes of action for promissory estoppel, wrongful foreclosure, and unfair competition. Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                    /s/_____
                    Robie, J.


We concur:


/s/_____
Raye, P. J.


/s/_____
Nicholson, J.

16